GEORGE W. ROUSE

*v.*

JOHN R. THOMPSON.

*Opinion filed October 2, 1907.*

1. CONSTITUTIONAL LAW—*title of act must fairly point out its subject matter.* The title of an act and the act itself should correspond,—not literally, but substantially; and while the title may be couched in general terms, to be sufficient it must fairly point out the subject matter of the act which follows.

2. SAME—*title to Primary Election law of 1906 is not in harmony with the general provisions of the act.* The title of the Primary Election law of 1906, which purports to apply to all primary elections for the selection of delegates to nominating conventions, is not in harmony with the general provisions of the act itself, which confine the operation of the act to nominating conventions of political parties and organizations.

3. SAME—*Primary Election law of 1906 is void in so far as it authorizes voting for party candidates.* The Primary Election law of 1906, in so far as it authorizes direct primary voting for the selection of party candidates by the "official primary ballot," is unconstitutional and void, in that such subject is not only not expressed in the title of the act, but by the language used is excluded therefrom.

4. SAME—*direct primary voting for candidates and voting for delegates may be included in a sufficiently broad title.* The subjects of primary elections for the selection of delegates to nominating conventions of political parties or organizations, and of primary elections where the voter may express his choice for party candidates, are so far germane to each other that they may be included in one act, provided the title of such act is sufficiently broad to embrace them both.

5. SAME—*sections 2 and 3 of Primary Election law of 1906 are void.* County central committees of political organizations are not "public agencies," and hence sections 2 and 3 of the Primary Election law of 1906, conferring power upon such committees to designate and establish delegate districts, are unconstitutional and void, in that the entire act is made dependent for its operation upon the action of such committees, which are merely groups of private individuals representing voluntary organizations.

6. SAME—*operation of a statute cannot be made to depend upon action of private individuals.* The power of the legislature to make

the ultimate operation of a statute dependent upon some action to be subsequently taken, other than a vote of the electors, is limited to action by municipal corporations, commissions, boards or officers, which are "public agencies" created by law as distinguished from private individuals.

7. SAME—*section 59 of Primary Election law of 1906, relating to vacancies, is void.* Section 59 of the Primary Election law of 1906, providing that when a vacancy in an elective office shall occur and a special election shall become necessary the managing committees of the several political parties for the territorial area in which such vacancy occurs shall nominate the candidate to fill such vacancy, is void, as infringing upon the right of a voter of the party to participate in a free and equal election, as secured to him by section 18 of the Bill of Rights.

8. SAME—*the provision of section 33 in regard to registration is void.* The provision of section 33 of the Primary Election law of 1906 prohibiting any but registered voters from voting at a primary election in all cases where registration is required as a condition precedent to voting at regular elections is void, in that it gives no opportunity for registration thirty days before the time for the primary election in cities which have adopted the City Election law, since, in such cases, it adds to the constitutional qualifications of a voter the requirement of residence in the election district for more than thirty days.

9. SAME—*provision limiting vote for representative to one candidate is void.* The provision of the Primary Election law of 1906 permitting only one candidate for representative in the General Assembly to be nominated by vote of the electors and requiring any additional candidate or candidates to be nominated by the senatorial convention is void, since the constitutional provision that a voter may vote for one, two or three candidates for representative requires any primary election law which provides for nomination of · candidates for representative to give the voter the right to participate in the selection of all candidates of his party which are to be nominated for representative.

10. SAME—*Primary Election law may require senatorial committee to fix number of candidates for representative.* The question of the number of candidates which a political party will nominate for representative in the General Assembly is a political and not a legislative question, and may be left by law to the determination of the senatorial committee or convention of the political party without violating the constitution; but the voter has a constitutional right to participate in the nomination of the full number of candidates for representative that are to be nominated. ·

11. SAME—*the legislature may properly limit voters at primary election to members of party.* The provisions of sections 33 and 34 of the Primary Election law, which are designed only to prevent any but voters affiliated with a particular party from voting at its primary elections, are reasonable and proper in view of the objects to be attained by a primary election law, and do not infringe upon any constitutional rights of voters.

12. SAME—*Primary Election law of 1906 is void.* While some portions of the Primary Election law of 1906 may be valid and some of the invalid portions might be eliminated from the act without destroying its efficacy, yet the unconstitutionality of sections 1 and 2, empowering county central committees to establish delegate districts, goes to the entire act, and renders it, as a whole, inoperative and void.

CARTER, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

THOMAS MARSHALL, and ROY D. KEEHN, (FRANCIS M. LOWES, of counsel,) for appellant:

The Primary Election act of 1906 is unconstitutional and void because it violates section 1 of article 4 of our constitution by attempting to lodge legislative power elsewhere than in the General Assembly. *People* v. *Election Comrs.* 221 Ill. 9; Cooley's Const. Lim. (7th ed.) 163; *Arms* v. *Ayer,* 192 Ill. 601.

Sections 2 and 3 of the Primary Election act attempt to delegate legislative power and authority to the county central committees of political parties to designate and establish delegate districts in their respective counties. This renders the act unconstitutional by passing it on, in an incomplete form, for a collection of individuals of no legal status (party committees) to complete,—"to breathe life and efficacy into" the act,—violating section 1 of article 4 of the Illinois constitution. *People* v. *Election Comrs.* 221 Ill. 9.

An act must be complete in all of its terms and conditions when it leaves the legislature, and not depend for its life and efficacy on the judgment and discretion of mere un-

official citizens. *People* v. *Election Comrs.* 221 Ill. 9; *Arms* v. *Ayer,* 192 id. 601.

The exercise of judgment and discretion by the party committees, as set forth in sections 2 and 3, in determining what the districts shall be, is not "a contingency," as defined by the courts, upon which the "going into effect" of an act may depend. *People* v. *Election Comrs.* 221 Ill. 9; *State* v. *Hayes,* 61 N. H. 264; *Brown* v. *Fleischner,* 4 Ore. 132.

Committees of political parties, when no provision is made in the act for their selection or election and no compensation provided for their services, are not officers, and hence could not be compelled to perform the duties this act attempts to impose on them. *United States* v. *Hartwell,* 6 Wall. 385; *Attorney General* v. *Drohan,* 169 Mass. 534.

Where the right of suffrage is conferred by the constitution and the qualifications of electors are therein fully defined, a law which presumes to prescribe any additional qualifications as a condition precedent to the right to vote, such, for example, as a longer residence in the county or precinct than that required by the constitution, is unconstitutional and void. 15 Cyc. 286; Cooley's Const. Lim. (7th ed.) 902; *Attorney General* v. *Detroit,* 78 Mich. 545.

Any law which has the effect of disfranchising a person to whom the constitution gives the right to vote is void. *People* v. *Election Comrs.* 221 Ill. 18; *Sanner* v. *Patton,* 155 id. 553.

The Primary Election act is an election law. The constitution fixes the electors' qualifications, and the legislature cannot alter them, add to or take from them. *People* v. *Election Comrs.* 221 Ill. 18; *Sanner* v. *Patton,* 155 id. 553; *Spier* v. *Baker,* 120 Cal. 370.

The Primary act is unconstitutional and void in that by section 59 thereof it denies to the elector his constitutional right to participate in nominations. Said section reads: "Where a vacancy shall occur in any elective office and a special election shall become necessary to fill the same, the

managing committees of the several political parties for the territorial area in which such vacancy occurs shall nominate the candidate or candidates for the respective parties to fill such vacancy." The right to choose candidates for public offices whose names will be placed on the official ballot is as valuable as the right to vote for them after they are chosen, and is of precisely the same nature. *People* v. *Election Comrs.* 221 Ill. 9; *State* v. *Houser,* 122 Wis. 534.

The legislature never had the power or authority to nominate, therefore it cannot delegate this power to political committees nor deny it to qualified electors. *People* v. *Election Comrs.* 221 Ill. 9; *State* v. *Houser,* 122 Wis. 534.

The Primary act is unconstitutional and void in that by section 24 thereof is denied to the elector his constitutional right to vote for one, two or three candidates for representatives in the General Assembly. The right to nomination is as important as the right to election, and will be protected and enforced by the courts. *People* v. *Election Comrs.* 221 Ill. 9; *State* v. *Houser,* 122 Wis. 534.

It would not be a "free and equal election" if only one out of three places were to be filled by the votes of electors. Bill of Rights, sec. 18; *People* v. *Election Comrs.* 221 Ill. 9.

The title of an act must not only embrace its subject, but must express it so clearly as to notify those to be affected of its real purpose. *Milne* v. *People,* 224 Ill. 125.

HARRY A. LEWIS, County Attorney, and WILLIAM F. STRUCKMANN, for appellee:

The powers delegated by the Primary Election act of 1906 are such, only, as may be delegated, because it delegates the doing of such acts, only, as cannot understandingly or advantageously be done directly by the legislature. The legislature has prescribed such limitations and conditions that what remains to be done involves only arrangements, investigations and details which can be delegated, and

the county central committee can be compelled to act. *Insurance Co.* v. *Swigert,* 104 Ill. 653; *People* v. *Hoffman,* 116 id. 587; *Schweiker* v. *Husser,* 146 id. 399; *People* v. *Supervisors,* 185 id. 288; *Page* v. *Allen,* 58 Pa. St. 338; *People* v. *Salomon,* 51 Ill. 37; *People* v. *Committee,* 164 N. Y. 335; *Ladd* v. *Holmes,* 40 Ore. 167; *People* v. *Rose,* 211 Ill. 249.

The provisions of the act imposing registration as a condition precedent to voting affects those elections, only, where registration is a condition precedent to voting at regular elections. Registration is not a condition precedent to voting at any elections except the elections held under the jurisdiction of election commissioners. As to those elections the law makes ample provision for registration in ample time before every primary election to be held under this act. Primary act, sec. 35; Hurd's Stat. 1905, chap. 46, secs. 67, 68; chap. 24, art. 4, sec. 3; chap. 139, art. 7, sec. 7; chap. 46, art. 4, sec. 6, and art. 3, secs. 3, 17; *People* v. *Election Comrs.* 221 Ill. 9; *People* v. *Hoffman,* 116 id. 587.

For purposes of guarding the purity of the ballot the legislature may make reasonable regulations governing party affairs. The regulations in the Primary act are reasonable, and the courts should not substitute their discretion for that of the legislature. *Arms* v. *Ayer,* 192 Ill. 601; *Ladd* v. *Holmes,* 40 Ore. 167; *People* v. *Hoffman,* 116 Ill. 587.

The constitution guarantees minority representation in the house of representatives. Each party should decide for itself how many candidates it desires to nominate for the house of representatives. Const. art. 4, secs. 7, 8.

Each and every provision of the Primary act is germane to the title. Those provisions relate to the particular subject indicated in the title and are a part of or incident to it, and are in a reasonable sense connected with and auxiliary to the object in view in the title, and therefore valid. *People* v. *Nelson,* 133 Ill. 565; *Chicago* v. *Reeves,* 220 id. 274.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Cook county by the appellant, George W. Rouse, a resident and tax-payer of said county, for and on behalf of himself and all other persons similarly situated who might join therein as parties complainant, against the appellee, John R. Thompson, as county treasurer of said county, to enjoin the said county treasurer from paying from the funds of said county to the judges and clerks of election and the persons furnishing supplies, the fees and expenses incurred in holding a primary election on August 4, 1906, in said county, under the provisions of an act entitled "An act to provide for the holding and the regulation of primary elections of delegates to nominating conventions, for the holding of such conventions, filling vacancies and fixing penalties for the violation of the provisions thereof," approved May 23, 1906, in force July 1, 1906. A demurrer was interposed to said bill and sustained and the bill was dismissed for want of equity, and an appeal is prosecuted to this court.

The object of the bill was to test the constitutionality of said act of May 23, and numerous grounds have been urged in this court in support of the contention that said act is unconstitutional and that the court erred in sustaining the demurrer to said bill and in dismissing the bill, which grounds will be considered in what we deem their logical order.

It is first contended that said act violates that portion of section 13 of article 4 of the constitution which reads as follows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title," on the ground that the subject of the act is not embraced in its title. The title of an act formerly was of little importance. Of recent years, however, by reason of the adoption by most of the States of constitutional provisions similar to the one above quoted, the title to an act in such States is now of very great importance. Some of the reasons which led to

the adoption of such constitutional provisions are said to be, first, to prevent "log-rolling" legislation; second, to prevent surprise or fraud upon the legislature by inserting provisions into bills of which the titles give no intimation and which might by oversight be carelessly and unintentionally adopted; and third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation being considered, so they might be heard thereon, if they so desire, by petition or remonstrance. And while such constitutional provisions are to be liberally construed in order that a legislative enactment may be sustained, the courts cannot permit such provisions to be disregarded or overridden in the enactment of legislation. It will be observed that the title to the act in question is general in its terms and applies to all primary elections held for the election of delegates to nominating conventions, and is not confined to primary elections of delegates to nominating conventions of political parties or organizations, which is the subject matter of the act which follows said title. If the title of the act is read, the ordinary mind would not, we think, from such reading alone, conceive that the subject of the act which was to follow the title would relate only to a primary election of delegates to nominating conventions of political parties or organizations, but might readily conceive that the legislature was providing a method whereby the delegates to all nominating conventions which might thereafter be held, and which might include conventions held by the various civic societies, orders, etc., existing throughout the State, as well as the numerous political and semi-political parties and organizations which exist in the State, were to be elected at a primary election held by virtue of the provisions of the act which was to follow said title. We think the title to said act, in order to be in harmony with the provisions of the act which follows it, as it was clearly the intention of the legislature to pass an act which should only provide for the holding of primary elec-

228—34

tions to elect delegates to nominating conventions to be held by political parties or organizations, should have contained apt words pointing out that the delegates to nominating conventions to be chosen at the primary elections which were to be held under the provisions of the act which the legislature were about to pass, were delegates to conventions to be held by political parties and organizations. The title of an act and the act should correspond, not literally but substantially, and while the title may be couched in general terms, to be sufficient it must fairly point out the subject matter of the act which is to follow it.

If, however, it be conceded that the title of the act sufficiently describes the conventions to which primary delegates are to be elected and in that particular be held to be sufficient, there is one subject of the act which is not only entirely omitted from the title, but by the language used in the title is excluded from the title of the act, which, under all the authorities, is not permissible. The act contains sixty-four sections, and not only provides for the holding and the regulation of primary elections of delegates to nominating conventions, but provides for a primary election, which is to be held at the same time that delegates are elected to said conventions, at which the voter may express his preference for United States Senator, and may vote direct for a candidate of his party for Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, Treasurer, Superintendent of Public Instruction, Attorney General, clerk of the Supreme Court, clerk of the Appellate Court, representative in Congress, member of the State Board of Equalization, State Senator, one representative in the General Assembly, county judge, county clerk, judge of the probate court, clerk of the probate court, clerk of the circuit court, recorder of deeds, county treasurer, county superintendent of schools, county surveyor, sheriff, coroner and State's attorney. It also provides for the printing and distribution, at public expense, of an "official primary ballot,"

which is to be voted by the voter at the primary election,
and a method is provided by which the party candidates for
the offices above enumerated, by petition or otherwise, can
cause their names to appear upon the "official primary bal-
lot," and for the receipt of such ballot at the primary elec-
tion, and for the canvass thereof and a certified return by
the election officers of the result of the casting of said official
primary ballots cast at the primary election; and it is also
provided, if it appear upon the canvass of the official pri-
mary ballots cast at the primary election that any candidate
of any political party for the nomination for any State, con-
gressional or senatorial office has received a plurality of all
the votes cast in any delegate district at such primary elec-
tion, such candidate shall have cast for him the votes of all
the delegates from such delegate district in the convention
before which he is a candidate, for at least the first ballot.
In reality we have here two acts, or two parts of one act,
which provide for two separate and distinct primary elec-
tions, one of which is to be had by "official primary ballot"
furnished at public expense, upon which the names of the
official candidates appear, and the other of which is by "del-
egate ballot" and which is not official and is paid for other-
wise than at the expense of the public, the one election being
held for the purpose of selecting persons who shall be the
candidates of the respective political parties in the respec-
tive conventions which are to be held by said several po-
litical parties, and who, if successful before such conven-
tions, will be the candidates of their respective political
parties at the regular election thereafter to be held, and
the other of which elections is held for the purpose of se-
lecting delegates from delegate districts to represent the
respective political parties in the different political conven-
tions which are to be held for the purpose of placing in the
field candidates for the several political parties at the ensu-
ing elections. When we examine the title of the act, how-
ever, we find only that an act is authorized which is to

provide for the "holding and the regulation of primary elections of delegates to nominating conventions," and that the title of the act wholly fails to authorize the incorporation in such act of provisions providing for the holding of a primary election for the purpose of selecting persons who are to be candidates of the several political parties and organizations before the several conventions of the respective political parties which may hold conventions, some of which candidates may be named by such conventions to stand as candidates of the respective political parties and organizations at the ensuing elections;—that is to say, one subject of the act is not only entirely omitted from the title of the act, but the title of the act is so framed as to exclude that subject.

In the case of *People* v. *Institution of Protestant Deaconesses,* 71 Ill. 229, the legislature, by an act entitled "An act to incorporate the Institution of Protestant Deaconesses and to provide for the encouragement and control of an hospital in Chicago," authorized the incorporation of the Institution of Protestant Deaconesses. Subsequent to its incorporation it sought to establish and maintain an orphan asylum in the city of Jacksonville, in Morgan county, by virtue of certain general powers conferred upon it by sections 2 and 3 of its charter, and the question was raised that it did not have the power, under its charter, to establish and maintain an orphan asylum outside of the city of Chicago, and the court held that if such power was conferred by sections 2 and 3 of its charter, the granting of such power was void under the constitution of 1848, which provided, "no private or local law, which may be passed by the General Assembly, shall embrace more than one subject, and that shall be expressed in the title." As the title of the act by which the Institution of Protestant Deaconesses was created confined its operation to the city of Chicago, that case would, in principle, seem to control this case, as here the title of the act confines the subject matter of the act to "the holding and the regula-

tion of primary elections of delegates to nominating conventions," and in so far as the act attempts to authorize and direct primary voting for the selection of party candidates it is outside of and beyond the title of the act and void.

We make no question but that the subjects covered by this act are germane to each other, and that under a proper title the legislature might pass an act authorizing a primary election to be held for the selection of delegates to nominating conventions and at the same time a primary election at which the voter might express his preference for party candidates. In order to do this, however, a title must be selected broad enough to include the two subjects. The generality of the subject expressed in the title of the act is no objection to it, as it is purely a matter of legislative discretion whether the subject expressed shall be general or specific. If general, it will include all subjects which are germane thereto and fall within the general designation; if specific, it will be confined to the subject specified in the title. The broader and more general the subject of the title the greater the number of particular or subordinate subjects which may be legitimately embraced in an act framed under such title. The subject has thus been illustrated: "If the title of an act should be 'An act to define and punish the crime of larceny,' it is clear that provisions defining perjury, arson or felonious homicide, and fixing the punishment of those offenses, would be subjects wholly foreign to the title of the act. But if the title should be, as is the case with our present Criminal Code, 'An act to revise the law in relation to criminal jurisprudence,' the subject thus expressed would clearly be broad enough to include provisions defining and fixing the punishment, not only of these, but of all other imaginable offenses against the public law, and also all proper provisions for the prevention of crimes, for the indictment, trial, conviction and punishment of all classes of offenders, and for fixing the jurisdiction, both original and appellate, of the various courts in criminal cases, and

prescribing the mode of procedure and the rules of evidence applicable to criminal trials. These subjects, multiplied as they are in detail, are all included in the general subject of criminal jurisprudence, and if the title of our Criminal Code, in expressing the subject of the act, had added to the words, 'to revise the law in relation to criminal jurisprudence,' as follows: 'and to define and punish larceny, perjury, arson,' etc., inserting a catalogue of every distinct species of crime known to the law, there would still have been but one subject expressed." So here, had the title of this act been "An act to provide for the holding of primary elections by political parties or organizations," the subject, as thus expressed, would have been broad enough to include the selection of both party candidates and delegates to a party convention at a primary election. It is, however, clear, we think, that provisions providing for the selection of party candidates are excluded from and entirely foreign to the title of an act "to provide for the holding * * * of primary elections of delegates to nominating conventions." The views hereinbefore expressed are supported by the following cases: *People* v. *Institution of Protestant Deaconesses, supra; Leach* v. *People,* 122 Ill. 420; *People* v. *Nelson,* 133 id. 565; *Dolese* v. *Pierce,* 124 id. 140; *Ritchie* v. *People,* 155 id. 98; *City of Chicago* v. *Reeves,* 220 id. 274; *Boehm* v. *Hertz,* 182 id. 154; *Milne* v. *People,* 224 id. 125; Cooley's Const. Lim. (2d ed.) p. 144.

It is next contended that said act is unconstitutional in this: That it violates section 1 of article 4 of the constitution, which is as follows: "The legislative power shall be vested in a General Assembly, which shall consist of a senate and house of representatives, both to be elected by the people,"—by attempting to lodge legislative power in the county central committees of the several political parties in the State by authorizing such county central committees to designate and establish delegate districts in their respective counties. The power referred to is conferred upon said

county central committees by sections 2 and 3 of the act, which read as follows:

"Sec. 2. The county central committee of each political party shall designate and establish delegate districts in their respective counties on or before the third day of July, A. D. 1906, and on or before the first day of March, A. D. 1909, and every four years thereafter. Such delegate district shall consist of not more than seven (7) contiguous election precincts or election districts in as compact a form, as possible, as now established or that may hereafter be established for the purpose of a general election, and shall contain, as near as may be, and not exceeding, eight hundred (800) voters of any one political party, for the purpose of electing delegates to a State, congressional, senatorial, county or sanitary district, and a municipal convention for the nomination of such municipal officers as are to be elected at the November election.

"Sec. 3. No delegate district for the election of delegates to any county convention shall consist of a larger area than one political town as now organized by law, or of a larger area than a congressional township in counties not under township organization. Separate delegate districts may be established for the purpose of selecting delegates to county conventions, making such delegate districts as nearly equal as practicable, having in view the number of party voters in such districts."

It is well settled that the power delegated to the legislature to make laws cannot be by that body delegated; that the legislature must decide what the law shall be, and that the power delegated to that department by the constitution cannot be again delegated to another body or authority; that a law must be complete in all its terms and conditions when it leaves the legislature. (Cooley's Const. Lim.—7th ed.—p. 163; 6 Am. & Eng. Ency. of Law,—2d ed.—1021; *Arms* v. *Ayer*, 192 Ill. 601; *People* v. *Board of Election Comrs.* 221 id. 9.) The principle established by the foregoing au-

thorities, and many others which might be cited, does not, however, prevent the legislature from passing a law the ultimate operation of which may by its own terms be made to depend upon some contingency, such as the affirmative vote of the electors in a given district; (*People* v. *Reynolds,* 5 Gilm. 1; *People* v. *Salomon,* 51 Ill. 37; *Erlinger* v. *Boneau,* id. 94;) or upon the action of some municipality, commission or other public agency designated in the act. (*Home Ins. Co.* v. *Swigert,* 104 Ill. 653; *Schweiker* v. *Husser,* 146 id. 399.) We have, however, examined the reported cases with care and been unable to find any case, nor has the diligence of counsel been able to point one out, where the delegation of such power to an individual or a number of individuals has been sustained by the courts. The general rule is that such power cannot be conferred upon a private person, but must be delegated, if at all, to some public agency, such as a municipal corporation, commission, local board or public officer. (8 Cyc. 831; *Banaz* v. *Smith,* 133 Cal. 102; *Ohio, etc. Railroad Co.* v. *Todd,* 12 Ky. L. 726; *People* v. *Bennett,* 29 Mich. 451; *Fogg* v. *Union Bank,* 1 Baxt. (Tenn.) 435; *Winters* v. *Hughes,* 3 Utah, 443.) In the *Bennett case,* in a well considered opinion by Campbell, judge, on page 464, it was said: "It is not in the power of a legislature to abdicate its functions or to subject citizens and their interests to the interference of any but lawful public agencies. * * * Such legislative and local authority as can be delegated at all must be delegated to municipal corporations or local boards and officers. * * * If it can be delegated at all * * * it must be delegated to some body recognized by the constitution as capable of receiving such authority. * * * It is impossible to sustain a delegation of any sovereign power of government to private citizens or to justify their assumption of it."

The entire act here under consideration is dependent upon the action of the county central committees of the several political parties of the State, founded upon said sections 2

and 3, in designating and establishing delegate districts in the respective counties of the State, and without such action the act is incomplete and incapable of execution. The several county central committees of the several political parties in this State, as such, are not created by any statute. They in no way represent the State or any political division thereof, and cannot be classified as belonging to either the legislative, executive or judicial departments of the State. They represent only a political party, and that party may only represent a vote equal to two per cent of the vote cast for president at the preceding presidential election. Such committees are not, therefore, officers of the State, but are the representatives of voluntary associations. The legislature, we think, was not therefore warranted by the constitution in conferring upon such county central committees the power to designate and establish delegate districts in the several counties of the State, as was attempted to be done by said sections 2 and 3 of said act, as said sections of said act clearly confer legislative power upon said county central committees.

It is, however, urged that such power has repeatedly been conferred by the legislature upon similar bodies in this State, which delegation of power has been sustained by the courts, and the power conferred upon the county boards of the several counties, and on the board of election commissioners, to establish election districts in the several counties of the State, is instanced as an example of the delegation and exercise of such power. We think the legislature clearly has the power to confer upon county boards and the board of election commissioners the power to establish election districts, and that it would have power to confer upon such bodies the power to establish delegate districts. The distinction between the county boards and the board of election commissioners, and the county central committees of the several political parties in the State, as applied to the exercise of such power, is, that said county boards and board

of election commissioners are public officers while the county central committees of the several political parties are not. The county boards and board of election commissioners fall clearly within the designation of "public agencies," as those words are used in the *Bennett case;* but the county central committees of political parties, where they exist, as they do in this State, as the representatives of purely voluntary organizations, cannot be said to be "public agencies," as they represent, not the State or any political division or department thereof, but a political party, which may be composed of only an inconsiderable portion of the people. We think, therefore, that sections 2 and 3 of said act are clearly unconstitutional and void in attempting to confer the power to designate and establish delegate districts throughout the State upon the county central committees of the several political parties in the State, on the ground that said county central committees are not public agencies but private individuals, and that legislative power, under no circumstances, can be delegated to a private individual.

It is further contended that section 59 of said act, which provides when a vacancy shall occur in any elective office and a special election shall become necessary to fill said vacancy, the managing committee of the several political parties for the territorial area in which such vacancy occurs shall nominate the candidate or candidates for the respective parties to fill such vacancies, is in conflict with section 18 of the Bill of Rights, which provides that "all elections shall be free and equal." It is provided by section 1 of the act that hereafter the nominations of all candidates for all elective State and county offices, clerks of the Appellate Courts, representatives in Congress, members of the State Board of Equalization, members of the General Assembly, sanitary district trustees, and such municipal officers as are to be elected at the November election by all political parties, shall be made by conventions of delegates to be elected by means of a primary election under the provisions of said act; and

by section 4, that the primary elections provided for to be held under said act shall be held on the first Saturday in August, 1906, and on the last Saturday in April, 1908, and every two years thereafter; and by section 64, that all acts and parts of acts in conflict with said act are repealed. It is clear that the offices enumerated in section 1 of said act are all brought under the provisions of said act, and if the several political parties desire to nominate candidates to be voted for for any or all of said offices, the same must be nominated by a convention selected and held under the provisions of said act at the time specified in said act, unless they can be, in case of vacancies, nominated by the respective managing committees of the several political parties, as is provided for in section 59 of the act. If it be true that a candidate for the full term of an office must be nominated by a convention selected and held under the provisions of said act, where in the constitution, it may be asked, is the power found, in case of a vacancy, for the delegation of such power of nomination to a managing party committee? The vacancy may occur one day after the office has been filled by an election, or the officer elect may never qualify, and on what principle can the individual member of a party be deprived of the right to participate in the selection of a candidate to fill such vacancy any more than he can be deprived by the legislature of the right to participate in the making of a nomination of a candidate for such office for a full term? And we apprehend no one would contend that the legislature could provide that all candidates for office should be nominated by the managing committees of the several political parties, as the exercise of such power would clearly destroy all party organization and thereby prevent free and equal elections, as they have been carried on in this State since long prior to the adoption of the constitution of 1870.

In *People* v. *Board of Election Comrs. supra,* it was held that when statutes are enacted which regulate the method

of selecting party candidates the provisions of the Bill of Rights apply, and that the right to choose candidates for public office is as valuable a constitutional right as the right to vote for them after they are chosen, and that the two rights are of precisely the same nature. Such being the case, we are of the opinion that the legislature cannot deprive the individual members of the several political parties of the State of the right to participate in the selection of party candidates to fill vacancies, by conferring the power to select such candidates upon managing committees or otherwise. The power of the individual voter at the polls to cast his vote, untrammeled, for the candidate of his choice is no more sacred than the right of the individual member of a political party to express his choice for party candidates at a primary election, and such right cannot be taken from him, even in the selection of a party candidate to fill a vacancy, under the guise of conferring such power upon a managing committee, or otherwise, without infringing upon his constitutional right to participate in a free and equal election as secured to him by the Bill of Rights. It is undoubtedly true that party committees may be authorized to fill vacancies occurring by reason of the death of candidates or their withdrawal, or other contingencies making such action upon behalf of such committees necessary by reason of the fact that it would be impracticable, for want of time, to nominate by the convention method. We are of the opinion section 59 of said act is unconstitutional and void.

It is also contended that the portion of section 33 of said act which provides, "in all cases where registration is required, as a condition precedent to voting at regular elections, only registered voters shall be permitted to vote at such primary election," is void, as it is said the Registration law, as it now stands in those cities of the State which have adopted what is commonly called the City Election law, fails to provide in such cities a means for the registration of voters within thirty days of the respective dates when it is

provided by said act said primary election shall be held,—
which contention appears to be true, as registration day in
such cities is fixed three weeks prior to the first Tuesday in
April and the time for holding primary elections is fixed on
the first Saturday of August in 1906 and on the last Satur-
day of April in 1908, and every two years thereafter, and
that more than thirty days must elapse, in every instance,
between the date fixed for registration and the date upon
which the primary elections are to be held, the effect of
which is, that in such cities many persons who are legal
voters in said cities on the day upon which the primary elec-
tions are required to be held, are prohibited from voting at
such primary elections by reason of the fact that they are
not registered, which disqualification has been occasioned
through no fault of the voter but by a defect in the law, as
the law has not afforded him an opportunity to register.

Section 1 of article 7 of the constitution provides:
"Every person having resided in this State one year, in the
county ninety days, and in the election district thirty days
next preceding any election therein, who was an elector in
this State on the first day of April, in the year of our Lord
1848, or obtained a certificate of naturalization before any
court of record in this State prior to the first day of Janu-
ary, in the year of our Lord 1870, or who shall be a male
citizen of the United States, above the age of twenty-one
years, shall be entitled to vote at such election."

This provision of the constitution applies to a primary
election with the same force that it does to a general elec-
tion, and any provision found in a primary election law
which prevents a legal voter who is qualified to participate
in a primary election of his party organization from voting
at such election by requiring him to reside in the election
district more than thirty days prior to the primary election
is unconstitutional and void. The act in question, by requir-
ing certain voters in the State to be registered before they
can participate in a primary election of their party and then

failing to furnish them an opportunity to register within thirty days of the date of the primary election, adds to the qualification of such voters by requiring a residence in the election district of more than thirty days prior to the election, which clearly is in conflict with the constitutional provision which provides if such voter has resided in his election district thirty days he shall be a qualified elector. If, under the guise of a registration law, a residence of thirty-three days, or any greater number of days than thirty, can be required of the voter in the election district where he is entitled to vote before he can vote at a primary election, then the qualifications of the voter might be extended until every qualification of the voter fixed by the constitution is annulled and all voters but a favored few can be prevented from participating in primary elections. In *People* v. *Board of Election Comrs. supra,* it was held the vote of every qualified elector must be equal in its influence with that of every other one. If voters in one part of the State who have resided in an election district thirty days are permitted to vote at primary elections while in other portions of the State they are not, then is the freedom and equality of elections secured to the people by their fundamental law destroyed.

We are of the opinion that section 33 of said act, in so far as it prohibits otherwise qualified electors from voting at primary elections unless they are registered, when no opportunity is afforded them by law to register within thirty days of the time when primary elections are to be held, is in conflict with the constitution and void.

It is also urged that the act is unconstitutional by reason of the fact that it permits the voter to vote for only one candidate for representative in the General Assembly, while under the provisions of the constitution it is said he has the right to vote for one, two or three candidates for such office. The constitution provides that the General Assembly shall consist of a senate and house of representatives, to be elected by the people; that the State shall be divided into fifty-one

senatorial districts, and that one senator and three representatives shall be elected from each senatorial district; and in the election of representatives "each qualified voter may cast as many votes for one candidate as there are representatives to be elected, or may distribute the same, or equal parts thereof, among the candidates, as he shall see fit; and the candidates highest in votes shall be declared elected." Section 1 of said act provides "that hereafter the nomination of all candidates for * * * members of the General Assembly * * * by all political parties, shall be made by conventions of delegates to be elected by means of a primary election under the provisions of this act." Section 16, that "any candidate for nomination for member of the General Assembly shall have his name printed upon the official primary ballot: *Provided,* at least thirty (30) days prior to the date fixed by law for the primary election, he shall file in the office of the Secretary of State a petition signed by at least two (2) per cent of the qualified primary electors of his party in his senatorial district." Section 24 provides that below the name of each office upon the official primary ballot shall be printed, in small letters, the direction to the voter to "vote for one," and the form of the official primary ballot to be prepared for the use of the voter by the county clerks or board of election commissioners is, so far as it applies to representatives in the General Assembly, in the following form:

"FOR REPRESENTATIVE IN THE GENERAL ASSEMBLY

. (Vote for one)

THOMAS B. HORN

JAMES R. SIMMONS

_____ "

It is apparent from the most casual examination of said constitutional provision that the voter has the right to vote

for one, two or three representatives in the General Assembly at the general election, as he may see fit, while by virtue of the provisions of said act hereinbefore referred to, at the primary election he has the right to vote for only one candidate for representative in the General Assembly, it being the clear intention, as expressed in the act, that one candidate for representative in the General Assembly shall be nominated by the voters of the respective political parties at the primary election, while if more than one candidate for representative in the General Assembly is to be nominated by a political party in any senatorial district, such additional candidate or candidates must be nominated by the senatorial convention of said district without reference to the vote of the members of the party at the primary election. The primary election, within the purview of the constitution, is an election and is controlled by its provisions, (*People* v. *Board of Election Comrs. supra,*) and the offices of representatives in the General Assembly having been brought under the provisions of said act by the express terms of section 1 thereof, and said offices being of the same class, we do not think that the legislature has the power to provide that one candidate for representative in the General Assembly shall be voted for by the individual voters of the party at the primary election, and if more than one candidate for representative in the General Assembly is to be nominated by a political party that such candidates in excess of one shall be nominated by the senatorial convention of such political party without reference to the result of the primary election. The right to nominate candidates for representative in the General Assembly is as important a right to the voter as the right to vote for said candidates after they are nominated and is of the same character, and if the constitution, as it does, confers upon the voter the right to vote for one, two or three candidates for representative in the General Assembly, any primary election law, to be valid, which provides for the nomination of candidates for representative in the

General Assembly, must give the voter the right to partici-
pate in the selection of all the candidates of his party for
representative in the General Assembly which are to be nom-
inated by his party.

It is said, however, that to hold that the voter has the
right to vote at the primary election for more than one
candidate for representative in the General Assembly is to
hold that each party must nominate at least two candidates
for representative in the General Assembly, if not three,
which would in all the senatorial districts of the State de-
feat minority representation, which is established by the
constitution. We do not think such a result would follow.
Since the adoption of the constitution of 1870 the prac-
tice in most, if not all, the senatorial districts of the State
has been for the majority party to nominate two candi-
dates for representative in the General Assembly and the
minority party to nominate one candidate for representative
in the General Assembly, and for the majority party, at the
election, to cumulate its vote upon the two candidates nom-
inated by it and the minority party to cumulate its vote upon
the candidate nominated by it. The decision of the question
whether the several political parties in the State will each
nominate one, two or three candidates for representative
in the General Assembly has heretofore rested with the
respective political parties, and the Australian Ballot law
clearly recognizes their right to determine such question and
to have the ballots so printed as to effectuate such intention.
That fact, however, has never been supposed to prevent the
voter from voting for one, two or three candidates for rep-
resentative in the General Assembly at the polls if he saw
fit so to do. We see no reason why a primary election law
cannot be so framed as to permit the different senatorial
committees of the several political parties of the State, by
resolution or otherwise, to suggest to the voters of their
respective parties the number of candidates that ought to
be selected by their party at the primary election for repre-

sentative in the General Assembly and to have such suggestion placed in some form upon the official primary ballot for the guidance of the individual voter, and to authorize the respective senatorial conventions of the several political parties to determine, by resolution or otherwise, the number of candidates for representative in the General Assembly which their party shall nominate in their senatorial convention. By such action each voter would enjoy his constitutional right to vote for one, two or three candidates in his senatorial district for representative in the General Assembly and to cumulate his vote upon one or two candidates, if he saw fit, and the political parties would be permitted to carry out the minority representation plan of the election of representatives in the General Assembly contained in the constitution. The present act deprives the voter of any choice in selection of more than one of the candidates of his party for representative in the General Assembly, if more than one candidate is nominated for such office. No law, as we view the matter, can be constitutional which prevents the individual voter from participating in the nomination of all the candidates of his party for representative in the General Assembly which are to be nominated at a primary election, if any candidate for representative in the General Assembly is to be so nominated. The grant of power to the senatorial committee or convention of a political party to determine for their party organization the number of candidates which their party will nominate for representative in the General Assembly would not be a delegation of legislative power to such senatorial committee or convention, as the right to determine whether or not a political party will nominate one or more candidates for representative in the General Assembly is a political and not a legislative question, and must be left necessarily, like many other questions pertaining to party management, to the managing committees or conventions of the several political parties of the State. We think the act in question, for the reason suggested, in so far as

it deprives the individual voter of the several political parties of the right to participate in the nomination of all the candidates of his party for representative in the General Assembly which are to be nominated by his party, infringes upon the right of the individual voter and is in conflict with the constitution.

By sections 33 and 34 of said act no person shall be allowed to vote at a primary election (1) who shall have signed the petition of a candidate of any party with which he does not affiliate, when such candidate is to be voted for at the primary election; or (2) who shall have signed the nominating petition of an independent candidate for any office for which office candidates are to be voted for at said primary election; or (3) who shall have voted at the primary election of another political party within the period of one year next preceding such primary election; and (4) any person desiring to vote at a primary election shall state his name, residence and party affiliation to the primary judges, one of whom shall thereupon announce the same in a distinct tone of voice, sufficiently loud to be heard by those present in the polling place, and no person who refuses to state his party affiliation shall be allowed to vote at a primary election; and the contention is made that all of said provisions place limitations upon the right of the voter to vote at a primary election not allowed by the constitution, and that they are unconstitutional and void. The object of holding a primary election by a political party is to select party candidates, and it is too plain for argument that no voter should be permitted to vote at the primary election of a political party unless he is a member of such party, and unless provision is made to prevent persons voting at a primary election for the candidates of a party who are not affiliated with such party, the whole scheme of nominating party candidates by a primary election would fail, because of being incapable of execution. In view of the object for which the primary election is held we have been unable to discover any

constitutional right of which the voter has been deprived by any of the foregoing enactments. It is the duty of the legislature to provide all such reasonable regulations as will make the provisions of the constitution effectual, and laws to prevent fraud, undue influence or oppression, and to preserve the equal rights of all from interference or encroachment, have universally been sustained by this court. (*Sherman* v. *People,* 210 Ill. 552; *People* v. *Board of Election Comrs. supra.*) The members of the several political parties must be guaranteed by law the right to select their candidates for office with the same freedom as they have the right to choose them after they are nominated, or the primary election at which they vote for candidates is a delusion and a fraud upon the individual voter. If the independent voter or the voter affiliating with an opposition party can vote at the primary election of a party with which he has no political affiliation, and thereby control the nominations of a party to which he is opposed and whose candidates he will vote against at the polls, the freedom of the primary election is destroyed. What regulations should be had to secure fair primary elections must rest largely with the legislature, and the courts should not override the discretion placed in that branch of the government by the constitution unless it clearly appears that the constitutional rights of the individual voter have been infringed upon. We are of the opinion that the provisions of the statute above referred to are not subject to constitutional objection.

In the consideration of the constitutional questions presented by this record we have not been unmindful of the well settled principle that all doubts should be resolved in favor of the constitutionality of a law when it is assailed; neither have we been unmindful of an equally well established principle of constitutional construction that some of the provisions of an act may be held valid while other portions thereof may be held unconstitutional. In the particulars hereinbefore pointed out we entertain no doubt but that

the act under consideration is in conflict with the constitution, and while some of its unconstitutional provisions might be eliminated from the act and its valid provisions enforced, several of the constitutional objections to the act pointed out go to the entire act, and render it, as a whole, inoperative and void.

As we have heretofore said, the entire act of May 23, 1906, is dependent upon the action of the county central committees of the several political parties of the State, founded upon sections 2 and 3, in designating and establishing delegate districts in their respective counties of the State, and without such action the act is incomplete and incapable of execution. The action of the several county central committees under said sections is purely voluntary. They are not required to make a record of their action or to certify the result thereof to the county clerks of their respective counties or to the board of election commissioners, or to any other officer, although the county clerks and boards of election commissioners are required to furnish official primary ballots and do numerous other acts based upon the action of said county central committees in designating and establishing such delegate districts. As to the manner in which the county clerks or boards of election commissioners are to obtain the information from said county central committees upon which to base the acts required of them by other sections of the act the act is entirely silent. If the several county central commitees should refuse to furnish such information and the county clerks or board of election commissioners or parties interested should seek, by *mandamus,* to require said county central committees to make a record of their action in designating and establishing delegate districts or to certify the result of their action in designating and establishing delegate districts to such officers, a legal answer to such application, if it were held *mandamus* would lie, would clearly be that no legal duty rested upon them to make such record or to furnish to said

officer or board such information. There seems to be a complete hiatus between sections 2 and 3 and the other sections of the act, which would render it impossible for the courts to compel the several committees and officials named in said act to carry its provisions into effect.

· The decree of the circuit court of Cook county will be reversed and the cause remanded to that court, with directions to overrule the demurrer to the bill.

*Reversed and remanded, with directions.*

Mr. Justice Carter, dissenting:

As I do not concur in the reasoning or the results reached as to all the points discussed and decided in the foregoing opinion, owing to the importance of the questions involved I have deemed it proper to state at some length my views on some of these questions.

The contention is made that the Primary act violates section 1 of article 4 of the constitution, in that it delegates legislative power vested in the General Assembly. That such power cannot be delegated has frequently been reiterated by the courts, but this is true only in a qualified sense. In the early case of *People* v. *Reynolds,* 5 Gilm. 1, in an exhaustive discussion of this subject, this court said (p. 12): "We may well admit that the legislature cannot delegate its general legislative authority; still it may authorize many things to be done by others which it might properly do itself. All power possessed by the legislature is delegated to it by the people, and yet few will be found to insist that whatever the legislature may do it shall do or else it shall go undone. To establish such a principle in a large State would be almost to destroy the government." A marked tendency has manifested itself in the direction of assigning to boards, commissions, local authorities, and especially to voters, duties heretofore generally performed by legislative bodies. (6 Am. & Eng. Ency. of Law,—2d ed.—1022.) The highest courts of the various States have not always ruled

in harmony on this question. Appellant cites *Rice* v. *Foster,* 4 Harr. (Del.) 479, *Ex parte Wall,* 48 Cal. 279, *Maize* v. *State,* 4 Ind. 342, *Thorne* v. *Cramer,* 15 Barb. 112, *State* v. *Hayes,* 61 N. H. 264, *Parker* v. *Commonwealth,* 6 Pa. St. 507, and *Barto* v. *Himrod,* 8 N. Y. 483, all holding substantially that a law, when passed by the legislature, must be complete, positive and absolute, and cannot depend for its ultimate operation upon any other tribunal, body or persons, even though those persons be the entire body of the electors. This is not the law in this State. In *Home Ins. Co.* v. *Swigert,* 104 Ill. 653, this court, by Justice Mulkey, stated (p. 665) : "Whatever the rule may be in other States it is well settled in this  *  *  *  that it is competent for the legislature to pass a law the ultimate operation of which may, by its own terms, be made to depend upon some contingency, as, upon an affirmative vote by the electors of a given district, or upon any other indifferent contingency the legislature in its wisdom may prescribe." To the same effect are *People* v. *Reynolds, supra, People* v. *Hoffman,* 116 Ill. 587, *People* v. *Salomon,* 51 id. 37, *City of Chicago* v. *Reeves,* 220 id. 274, and many other cases.

It is held that the act delegates legislative power because sections 2 and 3 thereof grant the right to the party committees to designate and establish delegate districts. As this court stated in *People* v. *Harper,* 91 Ill. 357, the principle has been repeatedly recognized by this and other courts of last resort that the General Assembly may authorize others to do those things which it could properly, but not understandingly or advantageously, do itself. To the same effect are *Schweiker* v. *Husser,* 146 Ill. 399, *City of Chicago* v. *Stratton,* 162 id. 494, and *Spiegler* v. *City of Chicago,* 216 id. 114. The correct statement of principles governing this question is found in Sutherland on Statutory Construction, (sec. 68, p. 70,) where that author says: "The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be,

and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." This court has more than once approved this distinction. *Spiegler* v. *City of Chicago, supra; Arms* v. *Ayer,* 192 Ill. 601.

Counsel for appellant insist that the ruling of this court in *People* v. *Election Comrs. supra,* is conclusive on this question. With this I do not agree. On the contrary, the reasoning in that decision tends strongly, in my opinion, to uphold the constitutionality of this act on the point now under discussion. In the law then under discussion the legislature had plainly delegated its legislative power. It had left to the committees the decision whether the officers should be nominated by the voters or by delegates, and whether they should be nominated by a majority or plurality vote. We there held that the law must be complete in its terms and conditions, so that everyone might know, by reading, what his rights were and how it would operate. These things could not be ascertained by reading that law, for it left to the party committees a discretion as to what the law should be, not, as in the law here under discussion, merely a discretion as to a few details of its execution. If appellant's contention be correct, then the provisions of the Election law, which have been in force for many years, giving the board of county commissioners power to form election districts and divide them, (Hurd's Stat. 1905, par. 30, p. 860,) and giving the board of election commissioners, under the City Election law, power to establish election precincts, (Hurd's Stat. 1905, par. 176, p. 891,) would be subject to the same criticism. The county board and the board of election commissioners must change the precincts from time to time, as the voting population requires. If appellant's contention is sound, then the legislature must fix the primary districts, as to boundaries and in every other respect, at the time the law is enacted,—a proceeding which

would not be practicable, especially in view of the frequent necessary changes in the boundaries of the election precincts and districts. We have here a very plain illustration of the wisdom of the statement in *People* v. *Reynolds, supra,* that "while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly or advantageously, do itself. Without this power legislation would become oppressive, and yet imbecile." In my judgment, in any law of this kind the legislature, to be practical, must leave details, such as referred to here, to be fixed and carried out through the agency of others.

The opinion of the court holds, not that the authority is improperly delegated, by this law, to designate the primary districts, but that it is delegated to improper persons,—that it should be delegated to public officials. Under the authorities it seems to me that if it is not unconstitutional to delegate authority by a legislative act to one class of persons, then it is not unconstitutional to delegate to any class of persons who can be compelled by law to carry out the provisions of the act. However that may be, the opinion of the court holds that the authority to form primary districts could be properly delegated to public officials, but that the members and officers of the political committees charged with calling the primary, designating and establishing districts and calling conventions are not public officials. In the most general and comprehensive sense a public office is an agency of the State, and the person whose duty it is to perform this agency is a public officer. There are numerous *criteria* which are not, in themselves, conclusive, yet which aid in determining whether a person is an officer, such as taking an oath, giving a bond, being entitled to fees, etc. But no one of these is absolutely essential. (23 Am. & Eng. Ency. of Law,—2d ed.—p. 322; Mechem on Public Officers and Agents, secs. 1-10). Section 24 of article 5

of the constitution of 1870 provides that "an office is a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed," etc. This court has held, in construing this section, that it has reference, in so far as it operates as a restriction upon the mode of appointment, to State offices only; that an office created by statute is wholly under legislative control. (*People* v. *Loeffler,* 175 Ill. 585; *People* v. *Bollam,* 182 id. 528.) Some employments of a private nature are considered public offices if connected with the public, as a bank or railroad president, secretary, treasurer or director. (*People* v. *Ridgley,* 21 Ill. 64.) An office may be only one of honor, without perquisites or profits. *Dickson* v. *People,* 17 Ill. 191.

A writ of *mandamus* has been defined to be a command issuing from a court of law of competent jurisdiction, in the name of the State, directing some inferior court, officer, corporation or person to do some particular thing therein specified which pertains to his office or duty. (19 Am. & Eng. Ency. of Law,—2d ed.—p. 716.) "It is a general rule that *mandamus* will not lie against one who does not occupy an official or *quasi* official position, though a few cases may be found where the writ has issued against private persons for the enforcement of purely private rights." (19 Am. & Eng. Ency. of Law,—2d ed.—p. 744.) "*Mandamus* lies, as is well known, not only against public officers, but against private officers in certain cases, and against public and private corporations." (Mechem on Public Officers and Agents, sec. 926.) *Mandamus* lies to enforce a public duty. (*People* v. *Chicago and Alton Railroad Co.* 55 Ill. 95; *Chicago and Alton Railroad Co.* v. *Suffern,* 129 id. 274.) This court has repeatedly held that the officials of railroad companies can be compelled to perform certain duties by *mandamus,* on the theory that they owe these duties to the State and are subject to its visitorial powers. (*People* v. *St. Louis, Alton and Terre Haute Railroad Co.*

176 Ill. 512; *Litchfield and Madison Railway Co.* v. *People,* 222 id. 242; *People* v. *Chicago, Indianapolis and Louisville Railway Co.* 223 id. 581.) Gas, water and telephone companies can be compelled by *mandamus* to discharge their duties to the public. (2 Spelling on Injunctions and other Extraordinary Remedies,—2d ed.—sec. 1592.)

If certain duties devolving upon party committees and their officers are of a public nature, then the same line of reasoning would apply to them, as to the performance of such duties, as has been applied to railroad and other officials. It is only recently that the legislature has recognized the existence of political parties and attempted to regulate the means by which partisan efforts shall be exercised. Independently of statutory enactment the courts would have no inherent power to interfere with the management of purely party affairs, but undoubtedly, by the great weight of authority, reasonable regulations as to party management, both of elections and primaries, are authorized. (15 Cyc. 332, and cases there cited.) Under the Australian Ballot law, party committees and the officers of party conventions have been charged for years with certain responsibilities in carrying out that law. If the reasons urged against the Primary law on this point would render it unconstitutional, why would they not apply with equal force to the Ballot law? But I do not believe the point is well taken as to either law. Decisions may be found where courts have held that they could not interfere with the actions of political parties or committees, but in those cases the statutes of the State did not attempt in any way to regulate the actions of such parties or committees on the point involved. In *Attorney General* v. *Drohan,* 169 Mass. 534, cited by appellant, while that court held that members of political committees were not such public officers as could be removed from their positions by *quo warranto* proceedings, yet at the same time it was held that the courts could enforce the provisions of the statute relating to such party

committees and caucuses. The political parties of this country, and their official representatives, in recent years, under the ballot and primary laws, have become, as to certain of their functions, *quasi* governmental agencies. "Primary laws necessarily create new legal rights and corresponding legal duties." (*State* v. *Houser,* 122 Wis. 534.) In *Brower* v. *O'Brien,* 2 Ind. 423, that court held that the writ of *mandamus* might issue, directed to the opposing candidate, when the performance of a ministerial duty was imposed upon him by law. The Supreme Court of Kentucky, in *Hill* v. *Holdam,* 87 S. W. Rep. 805, held that where, under a primary law, the committee or governing authority of a party. has power to determine and decide who shall have the nomination, a court may require the committee to act, or may restrain from acting a committee which has no jurisdiction under the law. In *State* v. *Jones,* 78 N. E. Rep. 505, the Supreme Court of Ohio held that a person who acted as secretary of two rival conventions could be compelled by *mandamus* to execute a certificate of nomination for each convention, in order that the candidates of both conventions could present their claims before the proper body for decision. In Spelling on Injunctions and other Extraordinary Remedies (vol. 2,—2d ed.—sec. 1570a,) the rule is laid down, where an election law provides that no person shall be entitled to vote at a primary, unless he be a qualified voter on the day of election, for the officers to be nominated thereat, and also possesses certain other qualifications, that the courts have jurisdiction to compel a political association to place on its rolls one who has complied with such regulations and usages. No court, so far as I am aware, has ever held that where the statute in plain terms placed specific duties upon political committees or other officers, the courts could not, by proper action, compel the performance of such duties. To hold otherwise would greatly weaken practical legislation as to primary and election laws. To my mind it is obvious that the members of the party committees charged with

such responsibilities by law become *quasi* public officials. The great weight of authority since primary laws have been discussed and construed by the courts is to that effect.   If it be admitted that the authority to fix primary districts can be delegated by law to boards of election commissioners or county boards, is it not simply a legislative question as to whether the law shall provide that these duties shall devolve upon this class of officials or upon the officials of party organizations, who, under this law, are made *quasi* public officials?   Is not this solely a matter of public policy, and not one of judicial construction?   As a matter of public policy, and the better practice, I might agree with the opinion of the court that the establishing of delegate districts should be left with the county boards or board of election commissioners, as the case may be, in the respective jurisdictions; but I do not believe that the provisions of the law now under discussion are void because such duties are placed by this law upon the party committees.

The contention is made by appellant that the act is unconstitutional for the particular reason that section 33 adds to the qualifications of electors and deprives constitutionally qualified electors of their right to vote at the primary. In discussing the constitutionality of any act it is necessary to keep in mind the principle so often announced, that the State constitution is a limitation upon and not a grant of power, and that the legislature can enact all laws not expressly limited by the constitution.   In *Sherman* v. *People*, 210 Ill. 552, we said on this subject (p. 558) :   "In order that legislation be held unconstitutional there must be some express provision prohibiting it.   In passing upon the constitutionality of a statute all presumptions are in favor of its validity and all doubts are resolved in its favor. No statute should be held unconstitutional unless the court is convinced, beyond a reasonable doubt, that it is not constitutional."   We said in *People* v. *Election Comrs. supra,* that at the time the constitution was adopted primary elec-

tions were not within the contemplation of its framers; that up to that time such elections "had not been made a part of the election system or subject to regulation by law. At that time candidates for office were nominated by means of the caucus and convention of delegates, and such nominations were purely private affairs of the political organizations."

There seems to have been no attempt in our statutes to regulate the holding of party caucuses or as to the nomination of candidates for office until in 1885 the City Election law was passed, (which was held constitutional in *People v. Hoffman, supra,*) wherein parties were recognized in the selection of the board of election commissioners and in the appointment of judges and clerks. The same year a primary law of two sections was enacted fixing penalties for improper acts in connection with the conduct of primaries. (Hurd's Stat. 1905, p. 945.) In 1889 the first attempt in this State was made to regulate with any detail the procedure to be followed in nominating candidates for office. (Hurd's Stat. 1905, p. 940.) This law rested entirely upon the voluntary will of the party committees as to whether or not it should be invoked. In 1891 the so-called Australian Ballot law was enacted in this State, (Hurd's Stat. 1905, p. 926;) for the first time taking control of many of the details of elections, and also in a general way regulating the nomination of candidates for such offices. In 1898 the first mandatory primary law was adopted, which applied at once only to Cook county, but could be adopted by a vote of the people in any county, city or incorporated town in the State, and was so adopted in several counties and in some of the cities. This law was amended in many details and passed as an entire new act amending the former act in 1901. (Hurd's Stat. 1905, p. 948.) In 1899 another law was passed, (Hurd's Stat. 1905, p. 945,) which applied only to counties of less than 125,000 and when adopted by a vote of the people. This was adopted in several localities. The first compulsory primary law applying to the entire State

was passed May 18, 1905. This law was declared uncon-
stitutional in *People* v. *Election Comrs. supra,* and the law
now under discussion was enacted at a special session of the
legislature very shortly thereafter. The growing sentiment
in favor of the regulation of caucuses, primaries, nominat-
ing conventions and the nomination of candidates for office,
generally, as shown by these various laws, has been dupli-
cated during the same years in practically all of the large
States of the Union, and such legislation is now agitated
and advocated in all sections of the country. Experience
first demonstrated that it was absolutely necessary to pro-
tect by strict laws the rights of the voter at general elec-
tions, but in recent years it has become evident that it is
just as necessary to control by positive enactment the nomi-
nation of candidates as to regulate the procedure of their
election.

Is it necessary, in order to keep within the letter and
spirit of our Bill of Rights and constitution, that the same
regulations obtain and the individual voter be entitled to
exactly the same rights, exercised in the same way, in the
nomination of all candidates that he has in voting on elec-
tion day? The Australian ballot system has been adopted
in every State of the Union. In practically all of these laws
there is a provision that a party organization, in order to
be recognized by the law as entitled, as such, to a place on
the ballot, must have cast at some specified recent election
a certain percentage, ranging from one to ten, of the total
vote. In *Miner* v. *Olin,* 159 Mass. 487, the Supreme Court
of that State held constitutional a law requiring the party
to have cast three per cent of the entire vote for Governor.
In *DeWalt* v. *Bartley,* 146 Pa. St. 529, the highest court
of that State held that it was "necessary to make some regu-
lations in regard to nominations in order to ascertain what
names shall be printed on the ballot. The right to vote can
only be exercised by the individual voter. The right to
nominate, flowing necessarily from the right to vote, can

only. be exercised by a number of voters acting together."
Without this, "three persons may claim to be a political
party, just as the three tailors of Tooley street assumed to
be 'the people of England.'" The Supreme Court of Min-
nesota, in *Davidson* v. *Hanson*, 87 Minn. 211, held that a
law was constitutional which permitted parties that cast ten
per cent of the vote to nominate. To the same effect is
*State* v. *Poston*, 58 Ohio St. 620. All laws regulating nom-
inations must recognize political parties. "We live in the
days of party government; whether it is desirable or not,
we cannot escape it if we would." (*State* v. *Houser, supra.*)
This court, in *People* v. *Election Comrs. supra*, stated that
when an official ballot is used, the "nomination of candidates
whose names shall appear upon the ballot must be regulated
in some way, otherwise the whole scheme would be inca-
pable of execution." See, also, *People* v. *Williamson*, 185
Ill. 106.

In construing the provisions of the constitution, as in
construing the law, the intent of the creators is the "polar
star." The intent is the law. (Sutherland on Statutory
Construction,—1891 ed.—sec. 234.) In construing the con-
stitution and Bill of Rights it is our duty to find, if possible,
the meaning of the various provisions in the light of what
its makers sought. The convention that adopted the Fed-
eral constitution did not attempt to draft a code. Chief
Justice Marshall, in *McCulloch* v. *State of Maryland*, 4
Wheat. (17 U. S.) 316, says (p. 407): "A constitution,
to contain an accurate detail of all the subdivisions of which
its great powers will admit and of all the means by which
they may be carried into execution, would partake of the
prolixity of a legal code and could scarcely be embraced by
the human mind. It would probably never be understood
by the public. Its nature, therefore, requires that only its
great outlines should be marked, its important objects des-
ignated, and the minor ingredients which compose those
objects be deduced from the nature of the objects them-

selves. That this idea was entertained by the framers of
the American constitution is not only to be inferred from
the nature of the instrument, but from the language." As
a result, the Federal constitution has been found sufficiently
specific, and yet so comprehensive and flexible, as to meet
the changing and complex needs of a people that has in-
creased within the century since its adoption from three to
more than eighty millions. What was said by Chief Jus-
tice Marshall as to the Federal constitution was in a large
degree the guiding and controlling influence of the framers
of the present constitution of our State. Cooley, in his Con-
stitutional Limitations, (7th ed. p. 238,) in discussing the
same subject, states: "The principles of republican govern-
ment are not a set of inflexible rules, vital and active in the
constitution, though unexpressed, but they are subject to
variation and modification from motives of policy and pub-
lic necessity, and it is only in those particulars in which ex-
perience has demonstrated any departure from the settled
practice to work injustice or confusion, that we shall dis-
cover an incorporation of them in the constitution in such
form as to make them definite rules of action under all
circumstances." With the principles of constitutional con-
struction in mind thus laid down by these great authorities,
is section 33 of the Primary law obnoxious to any constitu-
tional provision of the State?

Does that provision of the Bill of Rights which reads,
"all elections shall be free and equal," (Const. art. 2, sec. 18,
Hurd's Stat. 1905, p. 55,) require that in order to have pri-
mary elections free and equal every citizen entitled to vote
at general elections must have the right to take part in the
primaries of all parties? This question answers itself. No
reasonable man so contends. "That election is free and
equal where all of the qualified electors of the precinct are
carefully distinguished from the unqualified, and are pro-
tected in the right to desposit their ballots in safety and un-
prejudiced by fraud. That election is not free and equal

228—36

where the true electors are not separated from the false, where the ballot is not deposited in safety or where it is supplanted by fraud. It is therefore the duty of the legislature to secure freedom and equality by such regulations as will exclude the unqualified and allow the qualified only to vote." (*Patterson* v. *Barlow,* 60 Pa. St. 54.) A voter is "free" when he is left in the untrammeled exercise of his right or privilege. The vote of an elector is "equal," in the sense used in our Bill of Rights, when that vote is counted at the same value as the vote of every other qualified elector exercising the privilege. When persons not legitimately qualified are permitted to vote, the legal voter is thereby denied his adequate porportionate share of influence in the election. The election as to him is unequal. (*DeWalt* v. *Bartley, supra; Ladd* v. *Holmes,* 40 Ore. 167; Wigmore on Ballot Reform, 23 Am. Law Rev. 719; *People* v. *Hoffman, supra.*) Did the constitution intend that a republican should vote at a democratic primary, or *vice versa,* or that a man who claims to be a member of no party is entitled to vote at either primary, as he may choose? No one will contend that the words "free and equal," as applied to the Primary law of 1898 heretofore in force in Cook county, which provides for democratic primaries on one day and republican primaries on another day, require that every citizen who is entitled to vote at the republican primary is also entitled to vote at the democratic primary. If this can not be done on different days, then it logically follows that if the primaries of all the parties are required to be on the same day, a republican could not go to the voting place and demand as his right both a republican and a democratic ballot and insist upon casting both. How, then, can it be reasonably argued that a man who is a member of no party has a right to insist upon voting the party ticket of any of the recognized parties? The conclusion irresistibly follows, that if the parties are to be recognized in the primaries there must be some test as to party affiliation and the party

qualification. If this be so, then much of the argument against the constitutionality of section 33 of the Primary law falls of its own weight. If the legislature has a right to fix party qualifications of any kind, then the question very largely resolves itself into a decision as to whether these qualifications so fixed are reasonable or unreasonable. Every member of the same party under the constitution and Bill of Rights must have a free and equal opportunity with every other member of the party to cast his ballot and have that ballot count for just as much as every other ballot cast at the same party primary.

In *People* v. *Democratic Committee,* 164 N. Y. 335, the court of last resort in that State, in holding constitutional a primary law requiring a declaration of party affiliations in order to vote, stated the abuses of old voluntary party organizations had become so common "that a demand was made for a primary election law sufficiently comprehensive in scope to assure all persons equal rights in the primary elections, conventions and political committees of the party with which they were allied." This law provided for the enrollment of the voter according to his party affiliations, and the only test was that "he shall express that intention to support generally at the next general, State or national election the nominees of such party for State or national officers."

In *Ladd* v. *Holmes, supra,* the Supreme Court of Oregon held that only electors of given parties were entitled to vote at their respective primaries, and that it is not a violation of the "constitution that all electors are not permitted to vote at a particular party election."

In *Commonwealth* v. *Rogers,* 181 Mass. 184, that court held that a primary law was constitutional, and among other things stated: "It would be a strange inversion to say that no laws can be passed upon the mode of voting at a preliminary meeting held only for the purpose of getting names printed upon an official ballot when laws can be

passed affecting the final vote. The legislature has a right to attach reasonable conditions to that advantage if it has a right to grant the advantage. * * * One specific objection urged is, that by section 91 no person having voted in the caucus of one political party shall be entitled to vote or take part in the caucus of another political party within the ensuing twelve months. It seems to us impossible to say, as a matter of law, that this is not a reasonable precaution against the fraudulent intrusion of members of a different party for sinister purposes."

In *State* v. *Jensen,* 86 Minn. 19, the court, in deciding a primary law constitutional which permitted only the members of a party to vote at a given party primary, laid down this rule: "We are of the opinion that the legislature may classify political parties with reference to differences in party conditions and numerical strength and prescribe how each class shall select its candidates, but it cannot do so arbitrarily and confer upon one class important privileges and partisan advantages and deny them to another class, and hamper it with unfair and unnecessary burdens and restrictions in the selection of its candidates."

In *State* v. *Drexel,* 105 N. W. Rep. (Neb.) 174, that court held that it was "necessary to recognize the existence of political parties and to classify them by some convenient standard."

As far back as 1881 the Supreme Court of Pennsylvania, in *Leonard* v. *Commonwealth,* 112 Pa. St. 607, held that only members of a given party had a right to take part in its caucuses or primary. To the same effect is *Hopper* v. *Stack,* 56 Atl. Rep. (N. J.) 1.

The constitutions of the States where primary laws requiring party affiliations have been upheld are substantially the same as to the rights of suffrage as our own.

The Supreme Court of California, in *Britton* v. *Board,* 129 Cal. 337, while holding a certain primary law unconstitutional, insisted that any primary law which did not permit

a party, through its organization, to advocate its political beliefs and protect such party organization would be absolutely opposed to the principle of self-government, saying (p. 346) : "A law which will destroy such party organization or permit it fraudulently to pass into the hands of its political enemies cannot be upheld;" that "self-preservation is an inherent right of political parties as well as of individuals." The opinion condemned that primary law because it did not permit the voter to be questioned "touching his political affiliations, past, present and future."

Section 33 of this Primary law first provides that a person must be a legally qualified voter, and then adds the constitutional provisions as to residence. No objection is made as to this. Then follows a provision that he must declare his party affiliation; then, that in places where registration is required under the so-called City Election act only registered voters shall vote. The section then provides that no person shall be allowed to vote at a given party primary if he has signed the petition of a candidate of a party with which he does not affiliate when such candidate is to be voted for at that primary election. This Primary law requires that in order for a man to be voted for at a given primary he must file a petition signed by a certain number of voters of his own party. If a man cannot vote at a primary of the party with which he does not affiliate, what reason has he to complain if he is not permitted to assist in naming a candidate to be voted for at that primary? If he has signed the nomination papers of a candidate of a different party from that with which he has been accustomed to affiliate, can it fairly be said that he is still a member of his former party or that he still affiliates with it?

The section then provides that no person shall be allowed to vote at the primary who has signed the petition of an independent candidate for an office for which candidates are to be voted for at the said primary election. This condition or test is most strenuously urged as being uncon-

stitutional and not giving "free and equal" rights to all the voters. It is insisted that a man who signs the nomination paper for only one independent candidate may be deprived of voting where candidates are to be nominated for many offices. The Australian Ballot law provides that candidates can be placed on the ballot, not only by the regular party organizations but by petitions of a certain number of voters, and the present Primary law does not attempt in any way to interfere with the provisions of the Australian Ballot law in this regard. Under that law a voter can sign petitions to place on the ballot a candidate for every office to be filled at an election. Is there any hardship in forbidding him, if he has signed a petition to nominate a candidate for one office, from taking part in a primary where he can vote to nominate candidates for all offices? A majority who take part in that primary will not wish to sign nominating petitions. If the principle contended for be upheld, then those who do sign might not only do that, but afterward take part in nominating candidates through the regular party primary. If the law permitted this, would it be "free and equal" in the sense that the constitution uses those terms? Suppose a voter first signs petitions for all places to be filled at the coming election, can he then rightfully demand the privilege of voting also at a party primary which is to nominate candidates for the same election? If not in that case, can he do so when he has signed for all but one place to be filled at the coming election? Where must the line be drawn? The section closes with the provision that a voter who has voted at a primary election of another political party within one year next preceding such primary election cannot vote the ticket of a different party within that year. Substantially this provision was upheld, as stated in *Commonwealth* v. *Rogers, supra.*

Any person who has given study to the subject, realizes that one of the most difficult provisions of a primary election law to draft and enforce is the test of party affiliation,

and the method of preventing members of a different party, or of no party, voting at the primary of a given political party. As was well said in *Ladd* v. *Holmes, supra:* "Electors of one party have no desire, unless prompted by sinister or evil motives, nor have they any inherent right within or without the constitution, to vote at some other party primary or election, hence no right or privilege of which they can complain has been intrenched upon or violated. We see no objection to the legislature providing for party elections and limiting the electoral privilege to party members."

Appellant contends that the test should be not past acts, but future intentions. How can the future be better judged than by the past? It has been frequently decided by the courts that on the question of the residence of a voter the intention largely governs, but that the intention can be shown not only by what the voter says, but also by his acts. (*Moffett* v. *Hill,* 131 Ill. 239; *Kreitz* v. *Behrensmeyer,* 125 id. 141.) This court plainly recognized in *People* v. *Election Comrs. supra,* (p. 28,) the principle that a test as to party affiliations in a primary law would be constitutional. For these reasons I concur with the conclusion reached by the court that the law is not unconstitutional on account of its test as to party affiliations.

Section 24 of this act is by the majority opinion held void because it gives party organizations the authority to limit the nominations to less than three candidates for representative in the General Assembly, thereby, it is claimed, denying the elector his constitutional right to vote for one, two or three candidates for representatives, as he may decide. Sections 7 and 8 of article 4 of the constitution (Hurd's Stat. 1905, p. 56,) reads: "The house of representatives shall consist of three times the number of the members of the senate, and the term of office shall be two years. Three representatives shall be elected in each senatorial district at the general election in the year of our Lord 1872, and every two years thereafter. In all elections of represen-

tatives aforesaid, each qualified voter may cast as many votes for one candidate as there are representatives to be elected, or may distribute the same, or equal parts thereof, among the candidates, as he shall see fit; and the candidates highest in votes shall be declared elected." Under this section minority representation in the General Assembly was provided for and the right given to voters to cumulate their votes in electing said representatives, so that a party having less than a majority of the votes in a given district might secure representation from that district. Ever since the adoption of the constitution the practice in this State has been for political parties, through the nominating conventions, to fix and limit the number of candidates which the party should nominate for representative. Only in very rare instances has any party nominated three candidates, and the practice has been (except in close districts) for the party having the most votes in a given senatorial district to nominate two and the other parties each to nominate one candidate for representative. When the constitution was adopted the intention plainly was that all parties should not be compelled to nominate three candidates in each senatorial district. The heading of this provision of the constitution has always been "minority representation," and section 12 of the schedule of the constitution applied that specific term to this provision. A mere reading shows that this constitutional provision plainly refers to the election itself, and not in any way, directly or indirectly, to the nomination of candidates for such election. In other words, while the constitution permits cumulative voting for representatives in the General Assembly at the election so as to allow representation to the minority party or group of individuals, it does not extend that system so as to cover the representation of minority factions of political parties or adherents of certain candidates at primaries or caucuses in making party nominations. When the Australian Ballot law was passed this practice as to nominating less than three candidates was

recognized, and special provisions were inserted as to certificates of nomination for the office of representative in the General Assembly, as well as for counting the votes for that office. The same legislature which at a special session passed this Primary law, amended at its regular session the provisions of the law as to counting the votes for representatives in the General Assembly. Amended section 17 of that law (Hurd's Stat. 1905, p. 931,) contains separate provisions as to the manner of counting the votes for representative when there are one, two and three candidates, respectively, of a given party, showing conclusively that the legislature did not intend to compel the nomination of three such candidates by each party in each senatorial district. If it was intended by this Primary law to deprive political parties of the power theretofore existing to determine for themselves the number of candidates they should nominate for representatives in the General Assembly, such a change of policy on so important and fundamental a question could properly only be made by express terms or by necessary implication. This Primary law does not by express terms attempt to repeal the provisions of the Ballot law on this point, and should not, in my opinion, be held to repeal it by implication, because there is not such inconsistency between the two acts that the provisions on this point in both acts cannot stand. This court held in *Village of Ridgway* v. *Gallatin County,* 181 Ill. 521, that repeals by implication were "not favored in law, and a later statute will never be held to repeal an earlier one unless they cannot be reconciled. It is the duty of the courts to construe them so as to avoid repeal, if such construction can be given, and a statute will never be held to be repealed by implication if it can be avoided by any reasonable hypothesis." To the same effect are *People* v. *Murphy,* 202 Ill. 493, and *People* v. *Mottinger,* 215 id. 256.

From an examination of this law it is very evident that the legislature did not intend to compel political party or-

ganizations to nominate candidates for all offices to be filled at a given election, but only to provide that a political party, if it desires, as a party, to nominate a candidate for any office named in article 1 thereof, must nominate such candidate according to the provisions of the Primary law. In other words, this law does not compel the nomination of candidates for office by parties, but regulates such nominations if made. If a party organization cast two per cent or more of the vote at the last presidential election it must nominate in a certain way, if it nominates at all as such. A body of men which cast less than two per cent of the vote, even though organized into a party, if they wish to nominate, must nominate in a different way.

It is clear that the provisions of the law are not the same as to all candidates nominated thereunder. Section 1 provides: "That hereafter the nominations of all candidates for all elective State and county offices, clerks of the Appellate Courts, representatives in Congress, members of the State Board of Equalization, members of the General Assembly, sanitary district trustees, and such municipal officers as are to be elected at the November election, by all political parties, shall be made by conventions of delegates to be elected by means of a primary election under the provisions of this act. This act shall not apply to the nomination of candidates for county commissioners in counties not under township organization and township officers. The title 'political party' shall mean a party which at the last preceding presidential election, cast for its candidates for presidential elector receiving the highest number of votes at least two per cent of the total vote cast at said election." It will be noted that this section provides only that nominations "shall be made by conventions of delegates," and that nothing is said as to nominating by a direct vote. Sections 13, 14, 15, 16 and 17 provide that candidates for certain offices may have their names printed on the "official primary ballot." These sections, in connection with others,

make it plain that as to certain offices the electors may express their choice at the primary. It is evident from section 14 that candidates for trustees of the State university, and from sections 24 and 29 that candidates for trustees of the Sanitary District of Chicago and candidates for municipal officers to be elected at the November election, can not have their names placed upon the official ballot, but are to be nominated by delegates elected at the primary and acting without instructions from the voter. It is further evident that candidates for certain offices are entirely exempt from the provisions of this law.

The contention is made in the briefs that it is unconstitutional to permit certain candidates to be nominated by delegates in convention, and to require candidates for certain other offices to be nominated under the same primary law by means of a direct vote of the people. The opinion of the court,—rightly, I think,—does not so hold. This law is not to compel the nomination of candidates by parties for any office, but to regulate the procedure in making such nominations, if the party, acting through its proper authorities, desires to make them. The legislature, therefore, can provide that candidates for certain offices shall be nominated by a convention of delegates without the voters expressing their choice as to such candidates, while they may provide that the voters can express their choice as to other candidates. As trustees of the State university, sanitary district trustees and certain candidates for municipal offices can be nominated by delegates without the intervention of the direct vote of the people, and at the same time county officers, members of Congress and certain State officers can be nominated by means of such direct vote, what is there unreasonable or unconstitutional in providing that the voters can instruct the delegates as to one candidate for representative in the General Assembly, and if it shall be decided to nominate two or three candidates for such representatives, that those other candidates shall be nominated by delegates in

convention, without the intervention of the direct vote? Each member of the house of representatives holds a separate office. Each one of the three positions of representative in the General Assembly, in a given senatorial district, is just as much a separate office, one from the other, as is the office of representative in the General Assembly separate and distinct from the office of State senator or the office of trustee of the State university. It is not held the law is unconstitutional because it does not provide that university trustees shall be nominated by direct vote while candidates for other elective State offices may be. Why, then, is it not equally unobjectionable to provide that one candidate for representative in the General Assembly may be nominated through the intervention of the direct vote, and additional candidates for that office, if it be decided to name them, may be nominated by delegates acting without instructions? It may be more difficult to arrange practically for the nomination of candidates for representatives in the General Assembly by these two different methods than it is to provide for the nomination of certain State officers by one method and certain other State officers by the other; but that is a question of detail in carrying out the law, and not a constitutional difficulty. It is well known that it has always been found difficult to carry out, practically and satisfactorily, the nomination for candidates for representatives in the General Assembly or their election under the minority provisions of the constitution. The opinion of the court holds that under the constitution the voter is entitled to vote for one, two or three candidates for nomination for candidates for representatives in the General Assembly, as he may wish. Does it not logically and inevitably follow, from this holding, that three candidates who have a majority of the delegates instructed for them must then be nominated by the conventions? To hold otherwise, it seems to me, is to make the right of the voter to cast his ballot for one, two or three candidates, as he may wish, of no practical value. I do not

think the minority provision of the constitution was ever intended to cover the nomination of candidates for representatives in the General Assembly, but only their election.

Considering the law as a whole, it provides that any person who desires to be a candidate for representative in the General Assembly can have his name printed on the primary ballot of his party, that the voter can only vote for one candidate for representative in the General Assembly in a given delegate district. The candidate who receives a plurality of the votes cast for that office in a delegate district is entitled to the votes of the delegates from that district for at least the first ballot, and it is evident that if any candidate has a majority of the delegates in the convention so instructed for him, he will be nominated on the first ballot, otherwise, after the first ballot the delegates will be free to vote for whom they choose. In any event, as I construe the law, after the nomination of one candidate the delegates would not be instructed as to any other candidate, but if they desire to nominate one or two additional candidates, while the majority of delegates could not be instructed for more than one candidate, yet the wishes of the voters would plainly be shown by the result as to all the candidates. This construction gives the same rights to every member of the same political party in a given senatorial district, and is in harmony with all the provisions of this law. In my judgment the provisions of this primary law with reference to the nomination of representatives in the General Assembly violate no constitutional provisions.

I concur in the decision of the court that section 33, in so far as it prevents otherwise qualified electors from voting at primary elections unless they are registered, when no opportunity is afforded them by law to register within thirty days of the election, is unconstitutional and void, but I do not believe that the void provision should render the whole act unconstitutional. "It will sometimes be found that an act is opposed, in some of its provisions, to the constitution,

while others, standing by themselves, would be unobjectionable. * * * In any such case the portion which conflicts with the constitution must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association must depend upon a consideration of the object of the law and in what manner and to what extent the unconstitutional portion affects the remainder. * * * Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section and yet be perfectly distinct and separable, so that the first may stand though the last fall." (Cooley's Const. Lim.—7th ed.—pp. 246, 247.) This court has frequently quoted this rule with approval. (*People* v. *Knopf*, 183 Ill. 410; Sutherland on Stat. Const. secs. 169, 170.) Striking out this provision does not in any way invalidate the rest of the law, or impair, in the slightest degree, its enforcement. It yet remains a complete and symmetrical whole.

I also concur in the opinion of the court that section 59, unnecessarily and without any good reason, deprives the voters of all voice in the nomination of candidates to be voted for at special elections, and is unconstitutional and void, but I gravely doubt that the entire law, with this section out, is therefore void as being incomplete and impossible of execution. The Australian Ballot law provides adequate means for nominating candidates for special elections.

I concur also in the general doctrine laid down in the majority opinion as to the constitutional requirements concerning the title of legislative acts. I am of the opinion, however, that the term "primary election" has come to have

such a well defined meaning that no one would be misled by its use in the present instance. The title to the act is poorly and inartificially worded, but, I think, sufficiently defines the subject matter of the act, and that the law should not be held void because of any imperfection in the title.