THE PEOPLE *ex rel.* Charles Dickerson

*v.*

M. O. WILLIAMSON, County Clerk.

*Opinion filed April 17, 1900.*

1. ELECTIONS—*section 4 of the Election act of 1891 construed.* Under section 4 of the Election act of 1891 (Laws of 1891, p. 108,) any political party which polled two per cent of the total vote cast at the next preceding general election held throughout the State is entitled to have its nominees placed upon the official ballot for any election held in the State, or in any electoral division or district of the State, until such party at some future general election held throughout the State shall fail to poll two per cent of the vote.

2. SAME—*right of party to have nominees placed on ballot not affected by intervening judicial election.* A political party which polled two per cent of the total vote cast at the next preceding general election held throughout the State is entitled to have its nominees for office placed upon the official ballot, without regard to the participation or non-participation of such party or its voters in a judicial

election for a particular district coming between two general elections held throughout the State.

3. SAME—*provisions of section 4 concerning per cent of vote in electoral districts construed.* The provisions of section 4 of the Election act of 1891, relating to the requirement that the polling of two per cent of the total vote cast at elections held in electoral divisions or districts or municipalities shall be necessary to the right of a political party to have its nominees placed upon the official ballot for elections in such divisions, districts or municipalities, refer only to political parties which did not poll two per cent of the total vote cast at the last general election held throughout the State.

ORIGINAL petition for *mandamus.*

This is a petition filed in this court, praying that a writ of *mandamus* issue, commanding the respondent, Williamson, county clerk of the county of Knox, in this State, to receive and file in his official capacity, as such clerk, a certain certificate of the nomination of the relator, Dickerson, as a candidate for the office of clerk of the circuit court of said county of Knox, to be voted for at the general election to be held in said county on the first Tuesday after the first Monday in the month of November, 1900.

The allegations of the petition, in substance, are, that on the 12th day of April, 1900, a convention of delegates representing the democratic party duly nominated the relator as the candidate of such party for the said office of clerk of the circuit court of said Knox county, and that a certificate of such nomination, signed by the presiding officer and secretary of said convention, and containing all that is required by the statute in such cases to be incorporated in a nomination certificate, was on said 12th day of April, 1900, presented to said respondent, Williamson, as such county clerk, with the request it be received and filed by him, as such clerk, as the certificate of the nomination of the relator as a candidate for said office of circuit clerk, in order that the name of the relator, as such candidate for said office, should be placed on the official ballot to be printed and to be voted

at the general election to be held in said county and
State on the said 6th day of November, 1900; that said
respondent, as such county clerk, refused to receive and
file such certificate of nomination for the reason set forth
in the following written objections signed by said re-
spondent, viz.:

"I, M. O. Williamson, clerk of the county court of Knox
county, Illinois, hereby refuse to file said nomination certificate
of Charles Dickerson for the office of circuit clerk of Knox
county, Illinois, for the following reasons: The election at
which the nominee for said office of circuit clerk will be voted
for under the law will be held in November, A. D. 1900. A gen-
eral election for the election of a supreme judge of the fifth
judicial district is to be held on June 4, 1900, and I have at this
time no means of knowing whether the political party known
as the democratic party, and by which party the said Charles
Dickerson in said nomination papers claims to be nominated
for said office, will, at said general election to be held June 4,
1900, poll at least two per cent of the entire vote cast in said
fifth judicial district general election for the election of su-
preme judge; the said general election for supreme judge in the
fifth judicial district being the next preceding general election
to the general election for State and county officers, including
that of circuit clerk of Knox county, Illinois, November 6, 1900.

M. O. WILLIAMSON, *County Clerk.*"

The Attorney General interposed a demurrer to the
petition, and the cause was submitted on the issue of law
raised by the petition and the demurrer thereto.

WILLIAMS, LAWRENCE & WELSH, for petitioner.

E. C. AKIN, Attorney General, for respondent.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The position taken by the respondent, Williamson, is,
that in order to entitle the relator, as the nominee of the
said political party, to be placed on the official ballot as
a candidate for a county or district office, it is essential
the said political party making the nomination should
have polled, at the general election next preceding the
election at which such nominee is to be voted for, at least

two per cent of the total vote cast in said Knox county; that the election to be held on the first Monday in June, 1900, in the fifth supreme judicial district for the election of a judge of the Supreme Court, (the said county of Knox being one of the counties included in said supreme judicial district,) will be the general election next preceding the November election in the year 1900 at which the relator desires to be voted for, and that as it is not and cannot be known whether the said political party which nominated the relator for said office will poll two per cent of the entire vote polled in the said county of Knox at said judicial election, it cannot now be known whether the relator, as such nominee, can be lawfully placed on the official ballot to be voted in said Knox county at said election to be held in November, 1900.

The view so entertained by the respondent arises out of a misconception of the true meaning of the statute which regulates the matter of the admission of candidates to places on the official ballot. By the act of the General Assembly in force July 1, 1891, entitled "An act to provide for the printing and distribution of ballots at public expense and for the nomination of candidates," etc., (Hurd's Stat. 1899, p. 802,) the State adopted the policy of providing at public expense the ballots to be cast by voters at general elections in the State. It was deemed proper to direct the mode and manner in which those desiring to become candidates should become entitled to have their names appear on such official ballots as such candidates. Two methods were prescribed by the act: First, through the medium of nominations by political parties; second, by means of nomination papers or petitions bearing the signatures of designated numbers of individual voters. The right asserted by the relator is based upon alleged compliance with the former of these methods,—nomination by a political party. Whether he is so entitled to have his name printed as a candidate on the official ballot to be used at the said election to be

held in November, 1900, depends upon the true construction to be given to section 4 of said act, that being the section which prescribes and regulates the method of certifying the nominations of political parties for places on the official ballot.   Section 4 reads as follows:

"Sec. 4.  Any convention of delegates, caucus or meeting representing a political party which at the general election next preceding polled at least two per cent of the entire vote cast in the State, *or* in the electoral district or division thereof or the municipality for which the nomination is made, may for the State, or for the electoral district or division thereof or municipality for which the convention, caucus or meeting is held, as the case may be, by causing a certificate of nomination to be duly filed, make one such nomination for each office therein to be filled at the election.   Every such certificate of nomination shall state such facts as are required in section 6 of this act, and shall be signed by the presiding officer and by the secretary of the convention, caucus or meeting, who shall add to their signatures their places of residence," etc.

Though but to regulate the mode and manner of preparing the official ballot, this statute relates to and involves the exercise of the elective franchise by those entitled to vote in the State.   It is therefore to be liberally construed, to the end the freedom of electors shall not be unnecessarily abridged or their rights and privileges as electors in any degree improperly restricted. The section provides, "any convention of delegates, caucus or meeting representing a political party which at the general election next preceding polled at least two per cent of the entire vote cast in the State, *or* in the electoral district or division thereof or the municipality for which  *  *  *  the convention, caucus or meeting is held,  *  *  *  may make nominations" to be placed on the official ballot.   It is thus seen the basis for the test of the right of a political party to secure recognition

for its nominees on the official ballot is the support the nominees of that party receive at previous general elections in the State at large or in electoral divisions or districts of the State or municipalities in the State. It will be observed said section 4 was so framed as to express in a single sentence the authority or privilege to make nominations possessed by a political party which had at the next preceding general election held throughout the entire State, polled at least two per cent of the total vote cast in the State, and also the authority or privilege to make nominations possessed by a political party which had, at the next preceding general election, polled two per cent of the vote cast in one or more of the electoral districts or divisions of the State or municipality therein, but had not at any general State election cast two per cent of the entire vote polled in the State. The incorporation, in the same sentence, of the legislative intent as to each of such political parties did not conduce to clearness of expression or meaning, but a careful reading and study of the section leaves the matter free from doubt.

Our construction of the section is, that a political party which polled two per cent of the total vote cast in the entire State at the next preceding general election held throughout the State may certify its nominations and have its nominees placed as candidates on the official ballot for any and all offices to be filled at any and all elections held in the State, or in any electoral division or district of the State, until such party shall at some future general election held throughout the State fail to poll two per cent of the total vote cast in the entire State, and that such authority so possessed by such political party to certify its nominations for places on the official ballots at all elections is not lost or affected by the failure of such party to poll two per cent of the votes cast at an election held in a judicial district of the State after the said next preceding general State election and prior to the next succeeding general State election. The

right acquired by a political party, by reason of having polled two per cent of the total or entire vote cast in the State at a general election held throughout the State, to have its nominees appear upon the official ballots can only be lost by the failure of such party, at a future general election held throughout the State, to cast two per cent of the vote polled at such future general State election.

Said section 4 also confers upon a political party or political parties which have not polled two per cent of the entire vote cast in the State at a general State election, but which polled two per cent of the vote cast at a general election in some one or more electoral divisions or districts of the State or in some municipality therein, authority to certify its nominees as candidates on the official ballot for offices to be filled by elections in such electoral divisions or districts or municipalities wherein such party cast two per cent of the total vote polled in such electoral divisions or districts of the State or municipalities, and the provisions of the section relating to the requirement that two per cent of the total vote polled in electoral divisions or districts or municipalities shall be requisite to the right to certify nominees on the official ballot have reference only to such political parties as shall have failed to poll or did not poll two per cent of the entire vote cast in the State at the election held throughout the State. It is conceded the democratic party polled two per cent of the entire vote cast in the State at the next preceding general election held in the State. It follows from what has been said, the nominations made by that party of candidates for election to the offices to be filled at the next general election to be held in the State in November, A. D. 1900, are (upon proper certificates and compliance with the provisions of the statute) entitled to appear as candidates of said party on the official ballot to be prepared for the electors at said ensuing November election, and that, wholly with-

out regard to the participation or non-participation of the said party, or the voters thereof, in the judicial election to be held in said fifth supreme judicial district of the State in the month of June in the present year.

The writ will be awarded as prayed in the petition, commanding the respondent to receive and file the said certificate of the nomination of the relator as the candidate of the democratic party for the office of clerk of the circuit court of Knox county at the said November election in the year 1900.              *Writ awarded.*