[No. 13603.  Department One.  July 31, 1916.]

THE STATE OF WASHINGTON, *on the Relation of Bruce Rogers, Plaintiff,* v. I. M. HOWELL, *Secretary of State, Defendant.*[1]

ELECTIONS—PRIMARY ELECTIONS — POLITICAL PARTIES — RIGHT TO SEPARATE BALLOTS—TEN PER CENT OF VOTES CAST—SUBDIVISIONS OF STATE—STATUTES.  In order to qualify under the primary law as a ten-per-cent political party, as applied to state-wide officers, the party must have polled ten per cent of the total vote cast at the last preceding election for some state-wide office; and as to candidates for any office confined to any given subdivision of the state, then, ten per cent of the total vote cast in such subdivision for some subdivisional office in that particular district; under Rem. & Bal. Code, § 4809, providing that any political party is entitled to a separate primary election ticket as a political party if any of its candidates received ten per cent of the total vote cast at such last preceding general or city election in this state, or subdivision thereof, "in which the candidate seeks the nomination."

SAME.  Under such statute, the fact that a candidate for United States senator is not a candidate for a state office in the functional sense, does not affect the status of the party as a ten-per-cent party as regards such candidate; since his candidacy is state-wide, and the criterion of the statute is "candidates or individual nominees  .  .  . in the state."

SAME.  In determining the status of a party as to state-wide candidates, the highest aggregate vote for any county or subdivisional candidates, cast in part of the counties or subdivisions of the state cannot be considered; since the number of votes cast for a state-wide candidate is determinative as to a party's state-wide standing.

SAME—POLITICAL PARTIES—EQUAL RIGHTS—POLITICAL QUESTIONS. Rem. & Bal. Code, § 4826, providing for the election of committees of political parties entitled to participate in a primary election, which includes only ten-per-cent parties, is not unconstitutional as denying a less than ten-per-cent party participation in a primary election, since such party has a right to participate under Id., § 4830, expressly reserving such right to them; and also, since the integrity of political parties is a political question, which cannot be interfered with by the courts.

SAME—POLITICAL PARTIES—STATUS.  Where the status of a party is fixed as a ten-per-cent party by its votes cast at the last preceding

[1]Reported in 159 Pac. 118.

election and qualifies it to hold a primary election, the fact that it then fails to cast a ten-per-cent vote does not affect the validity of the election of its party committeemen at such primary election.

SAME—UNIFORMITY. The primary election law making a distinction in the method of nominating candidates between parties casting more and those casting less than ten per cent of the total vote at the last general election, does not violate Const., art. 11, § 5, requiring uniformity in election laws; since (1) the constitution relates only to elections and not to nomination of candidates, and (2) the law is uniform in its application to all persons and parties similarly circumstanced.

Application filed in the supreme court July 25, 1916, for a writ of mandamus to the secretary of state, to compel the acceptance of a declaration of candidacy, heard upon demurrer and answer to the petition. Denied.

*Charlotte F. Jones*, for petitioner.

*The Attorney General*, for defendant.

ELLIS, J.—This is an original application for a writ of mandamus, directed to the secretary of state, commanding him to accept the declaration of candidacy and filing fee of the relator, Bruce Rogers, for the office of United States senator on the socialist ticket, to be voted for at the primary election on September 12, 1916. Relator bases the right to file his declaration of candidacy in the office of the secretary of state on the claim that the socialist party is a political organization of the state having the right, under § 6 of the primary election law (Laws 1907, p. 459; Rem. & Bal. Code, § 4809), to have a state-wide primary election ticket as a political party. The petition, exclusive of caption and signature, is as follows:

"The above named petitioner, Bruce Rogers, respectfully shows to the court:

"(1) That he tendered to the defendant, I. M. Howell, secretary of state of Washington, his declaration of candidacy for the office of United States senator on the socialist ticket, with the statutory filing fee, said office to be voted for on September 12, 1916, on the 14th day of July, 1916.

"(2)   That on the 14th day of July, 1916, the said defendant refused to accept your petitioner's declaration of candidacy and filing fee, as aforesaid.

"(3)   That said refusal of said defendant was and is in violation of the constitution of the United States, article XIV, and of article I, section 19 and section 30, and article XI, section 5, of the state constitution.

"(4)   That said refusal of said defendant was and is contrary to the law in such case made and provided.

"That this petition is based upon the affidavit of Bruce Rogers hereto attached, and made a part hereof.

"Wherefore, your petitioner prays that a writ of mandamus shall issue from this court, directed to said defendant, as prayed for in said affidavit of Bruce Rogers, hereto attached."

The relator's affidavit in support of the petition, exclusive of formal parts, is as follows:

"Bruce Rogers, being first duly sworn, on oath deposes and says:   That he is the petitioner and plaintiff above named; that I. M. Howell is the duly elected, qualified and acting secretary of state of Washington; that on the 14th day of July, 1916, your petitioner tendered to above named defendant at his office at Olympia, Washington, his declaration of candidacy for the office of United States senator on the socialist party ticket, accompanied by filing fee as provided by law, subject to the primary election to be held on the 12th day of September, 1916, said office to be filled at the general election to be held on the 7th day of November, 1916; that your affiant states and believes it to be a fact that the socialist party is a political organization and polled more than ten per cent of the total vote cast in the state at the last preceding general election, and more particularly, at the election alleged to be a general election held on November 3, 1914, the socialist party polled more than ten per cent of the total vote cast in the state, and more particularly, in the second and third congressional districts, and in more than twenty-one counties; that the socialist candidate for representative in Congress in the second congressional district received 10,099 votes, and that the total vote cast for said office in said congressional district was 65,794; that in the county of Stevens the socialist candidate for state senator received 909

votes, and the total vote cast for said office was 6,152, and that Stevens county is the second senatorial district; that a great number of other candidates of said party for county and state offices in counties situated in the first, second, third, fourth and fifth congressional districts of Washington, received more than ten per cent of the votes cast for their respective offices in said counties;

"That it is the duty of the secretary of state of Washington, made and provided by law, to receive all declarations of candidacy for the office of United States senator for nomination at said primary election, of all political parties or organizations, any of whose candidates having received ten per cent of the votes cast at the last preceding general election in this state, or subdivision thereof, in which the candidate seeks the nomination.

"Notwithstanding the law and the compliance therewith by your petitioner to file as a candidate for said office on the socialist party ticket, subject to the said primary election, the defendant, I. M. Howell on the 14th day of July, 1916, refused and still refuses to accept the said declaration of candidacy of your petitioner.

"That your petitioner has no plain, speedy and adequate remedy at law."

The secretary of state has demurred to the petition and affidavit on the ground that they state no facts entitling relator to any relief. He has also answered denying the allegations of the petition and affidavit and denying particularly that the candidates for offices referred to in the affidavit received the number or percentage of votes therein set forth, except where such votes or percentage is the same as that shown by the election report of the secretary of state for the general election of 1914, which report is attached to and made a part of the answer. We shall not consider the answer and demurrer separately, since they present the same question which, as we view the case, must be determinative of relator's rights in the premises. That question is as to the vote of what candidate or candidates of a given political organization shall be taken as the criterion in determining whether such party polled ten per cent of the total vote cast

at the last preceding general election. The answer to that question depends upon the proper construction of § 4809, which reads as follows:

"Any political organization which at the general or city election last preceding the primary was represented on the official ballot by either regular party candidates or by individual nominees only, may, upon complying with the provisions of this act, have a separate primary election ticket as a political party, if any of its candidates or individual nominees received ten per cent of the total vote cast at such last preceding general or city election in this state, or subdivision thereof, in which the candidate seeks the nomination."

Relator's main contention is that the words "or subdivision thereof" make the statute mean that, if any given candidate of any given political organization received at the last preceding general election ten per cent of the total vote cast in such subdivision, then that party is a ten-per-cent party of the state and as such is entitled to have a separate state-wide primary election ticket as a political party. The statute, taken as a whole, is capable of no such construction. Read in context, these words cannot be held to dominate the whole section without rendering the clause immediately following them meaningless. The section, read as a whole, clearly means that a political organization which did not poll for any candidate for any state-wide office ten per cent of the total vote of the state cast at the last preceding general election cannot have a separate primary election ticket at the next primary election so far as candidates for the nomination of state-wide offices are concerned; but, if it polled ten per cent of the vote cast in any given subdivision of this state for any office confined to that subdivision at the last preceding general election, then such party is entitled to a separate primary ticket in that subdivision containing the names of its contestants for the nomination for any or all offices to be filled in such subdivision. Stated differently, the

· statute means that, in order to qualify under the primary law as a ten-per-cent political party as applied to candidates for state-wide offices, the party must have polled ten per cent of the total vote cast at the last preceding general election in the state for some state-wide office. But as applied to candidates seeking nomination for any office confined to any given subdivision of the state, the party qualifies as a political party under the primary law as to such candidates only by having polled ten per cent of the total vote cast at the last preceding general election for some subdivisional office in that particular subdivision in which the candidate seeks the nomination. The closing words of the section "in which the candidate seeks the nomination," make this construction imperative and make relator's construction impossible. The only possible confusion in the above quoted statute arises from the uniting in one sentence provisions for a party status under two separate contingencies, one to be determined by the prior vote for candidates for state-wide offices, the other to be determined by the prior votes for candidates for subdivisional offices. We have been cited to no decision of any court save one touching a statute in which a similar confusion is met. A statute of Illinois relating to the placing of the names of candidates on the official ballot read as follows:

"Sec. 4. Any convention of delegates, caucus or meeting representing a political party which at the general election next preceding polled at least two per cent of the entire vote cast in the state, *or* in the electoral district or division thereof or the municipality for which the nomination is made, may for the state, or for the electoral district or division thereof or municipality for which the convention, caucus or meeting is held, as the case may be, by causing a certificate of nomination to be duly filed, make one such nomination for each office therein to be filled at the election."

The supreme court of that state notes the same confusion in the statute there, and arising from the same cause, which we have noted in our statute. That court said:

"It will be observed said section 4 was so framed as to express in a single sentence the authority or privilege to make nominations possessed by a political party which had at the next preceding general election held throughout the entire state, polled at least two per cent of the total vote cast in the state, and also the authority or privilege to make nominations possessed by a political party which had, at the next preceding general election, polled two per cent of the vote cast in one or more of the electoral districts or divisions of the state or municipality therein, but had not at any general state election cast two per cent of the entire vote polled in the state.   The incorporation, in the same sentence, of the legislative intent as to each of such political parties did not conduce to clearness of expression or meaning, but a careful reading and study of the section leaves the matter free from doubt.

"Our construction of the section is, that a political party which polled two per cent of the total vote cast in the entire state at the next preceding general election held throughout the state may certify its nominations and have its nominees placed as candidates on the official ballot for any and all offices to be filled at any and all elections held in the state, or in any electoral division or district of the state, until such party shall at some future general election held throughout the state fail to poll two per cent of the total vote cast in the entire state, and that such authority so possessed by such political party to certify its nominations for places on the official ballots at all elections is not lost or affected by the failure of such party to poll two per cent of the votes cast at an election held in a judicial district of the state after the said next preceding general state election and prior to the next succeeding general state election.   The right acquired by a political party, by reason of having polled two per cent of the total or entire vote cast in the state at a general election held throughout the state, to have its nominees appear upon the official ballots can only be lost by the failure of such party, at a future general election held throughout the state, to cast two per cent of the vote polled at such future general state election.

"Said section 4 also confers upon a political party or political parties which have not polled two per cent of the entire vote cast in the state at a general state election, but

which polled two per cent of the vote cast at a general election in some one or more electoral divisions or districts of the state or in some municipality therein, authority to certify its nominees as candidates on the official ballot for offices to be filled by elections in such electoral divisions or districts or municipalities wherein such party cast two per cent of the total vote polled in such electoral divisions or districts of the state or municipalities, and the provisions of the section relating to the requirement that two per cent of the total vote polled in electoral divisions or districts or municipalities shall be requisite to the right to certify nominees on the official ballot have reference only to such political parties as shall have failed to poll or did not poll two per cent of the entire vote cast in the state at the election held throughout the state." *People ex rel. Dickerson v. Williamson,* 185 Ill. 106, 56 N. E. 1127.

Though the statute there related to official ballots, and our statute here in question relates to the primary ticket, the analogy of the two statutes in other particulars is complete. We are clear that our own statute, so far as concerns the question here involved, must be construed in precisely the same manner as the supreme court of Illinois construed the Illinois statute. If we attempt any other construction, we are met with the utmost uncertainty and confusion. We are finally reduced to the position of holding that any party which has polled at the last preceding general election *in only one precinct* of the state ten per cent of the total vote cast in that precinct is entitled to a primary election ticket for its candidates for nomination for state-wide offices at the next election. This would seem preposterous. Counsel for relator so admits, yet it is the necessary logical result of counsel's contention. Such a holding would be simply construing the statute out of existence and defeating the only possible purpose of the legislature in enacting it, namely to avoid the useless expense to the state of furnishing a state-wide primary ticket which there was no reasonable ground for believing ten per cent of the voters of the state would call for

and use.    As said by this court in *State ex rel. Zent v. Nichols*, 50 Wash. 508, 523, 97 Pac. 728:

"A too great multiplication of parties might result if all associations of persons claiming to be such were so recognized . . . thus entailing upon the state excessive costs in the conduct of primary elections without corresponding benefits."

We do not hold that a party which, at the last preceding general election, polled ten per cent or over of the total vote for some state-wide office is not entitled to a primary ticket in every subdivision of the state and to have its contestants for nomination for local offices placed upon such ticket even though in some of the subdivisions that party did not poll ten per cent of the total vote cast in such subdivision for any office at such preceding election.    Obviously, it would be so entitled, since in no other way than by furnishing primary tickets in each precinct could a complete primary vote be taken for state-wide offices.    *People ex rel. Dickerson v. Williamson, supra; Gaylord v. Curry*, 145 Cal. 154, 78 Pac. 548. The same thing may be true of the counties and precincts in a Congressional district in which the vote of the district for the party candidate for Congress was ten per cent of the total vote of that district at the last preceding general election.    But we do not so decide.    That question is not before us.    Certain it is, however, that the converse of the above proposition is by no means true.    The right to a primary ticket in any county or other subdivision of the state cannot confer that right in the whole state, because it is not necessary so to extend it in order to have a complete primary vote for the county and precinct offices or other subdivisional offices in subdivisions where the ten per cent qualification has been attained.

It is conceded that, at the general election held November 3, 1914, candidates for no state-wide office were voted for save that of United States senator.    It is also conceded that the socialist candidate for United States senator at that elec-

tion received less than ten per cent of the total vote cast at that election. If our construction of the statute is correct, it is clear, therefore, that the socialist party is not entitled to a state-wide primary ticket at the primary election to be held on September 12, 1916, for the purpose of nominating candidates to be voted on at the general election on November 7, 1916.

But relator contends that, since the United States senator is not a state officer in the sense that his functions are not confined to state affairs nor exercised within the state, the status of the socialist party in this state as a ten-per-cent party was not affected by the failure of its candidate for United States senator to receive ten per cent of the entire vote cast at the last general election; the argument being that it is only the vote for state offices in the functional sense that can be used in determining the party's status. The answer is that the statute does not so provide. As we have seen, it makes the polling of ten per cent of the total vote cast at such preceding general election "in this state" the criterion as to the status of the party as a ten-per-cent party. The statute neither says nor implies that the character of the duties or functions of the candidate voted for has anything to do with the matter. It is the number of votes for "any of its candidates or individual nominees . . . in the state" which is made the criterion. It is not disputed that the socialist candidate for United States senator in 1914 sought a state-wide suffrage. Such was undoubtedly the field of his candidacy. The character of the duties of the office is unimportant.

We are clear that under our statute the status of any political party in this state, so far as the right to a state-wide primary ticket is concerned, is to be determined by whether or not any candidate of that party who stood for any office requiring a state-wide vote received ten per cent of the total vote cast in the state at the last preceding general election at which candidates for any state-wide office were voted for.

All that we have said in the foregoing is necessarily subject to the following qualification: If, at any general election in this state, no office requiring a state-wide vote is to be filled (as would have been the case with the general election of 1914 had not candidates for the office of United States senator been voted on at that election), the vote at such election cannot be taken as the criterion as to the state-wide status of any political party as a ten-per-cent or less-than-ten-per-cent party. Such an election could only fix the status of the different political parties in the separate subdivisions of the state, since only candidates for subdivisional offices would be voted for at such election. As to state-wide offices, the party's status would remain as fixed by the last preceding general election at which some state-wide office was filled. Such is the necessary intention imposed upon the entire statute by its last clause "or subdivision thereof, in which the candidate seeks the nomination."

It is suggested that the aggregate of the highest votes received by any of the candidates in each county or other subdivision of the state for county or subdivisional offices should be taken as the criterion, and that, if such aggregate equal ten per cent of the total vote cast in the state, then the party is entitled to a state-wide primary ticket. But a fair construction of the petition and affidavit for the writ here in question discloses the fact that neither contains any allegation that such an aggregate of the socialist vote for the different candidates in the different counties or other subdivisions would equal ten per cent of the total vote cast in the state at the general election of 1914. The allegation of a belief that the party polled ten per cent of the total vote at the election of 1914 is so qualified by what follows it in the same sentence as to confine its meaning to a statement that, in twenty-one counties of the state and in two congressional districts, the highest socialist vote exceeded ten per cent of the total vote cast in such counties and districts. We can-

not go outside the pleadings and determine an issue which they do not present.

But even assuming that the petition and affidavit were sufficient to raise the question, we are unable to find any warrant in the statute for holding that the aggregate of the highest vote for candidates for subdivisional offices in different subdivisions can be made the criterion in determining the status of the party as a ten-per-cent party or otherwise. The statute, construed as we have found it must be construed, merely makes the highest vote in each subdivision the determinative factor as to the status of the party in such subdivision alone. It gives to such a vote no force as a determining factor fixing the status of the party throughout the state. The words of the statute, "if any of its candidates or individual nominees receive ten per cent of the total vote cast at such last preceding general election," clearly mean any one of its candidates, not a combination of any number of its candidates. Any other view would lead to interminable investigation and computation in every instance. It would necessitate taking, for instance, the vote for sheriff in one county, the vote for county auditor in another, the vote for some other candidate in another, and so on throughout the whole list of candidates, selecting the highest vote in each instance. If this failed to produce a ten-per-cent aggregate, we would then be reduced to the necessity of recanvassing the vote throughout the entire state by precincts, taking the highest vote polled by any candidate for each precinct and adding them together so as if possible to produce an aggregate equal to ten per cent of the entire vote cast in the state. It is simply impossible to believe that by the words used in the statute the imposition of any such burden was ever intended.

It is contended, inasmuch as § 22 of the primary election law, Rem. & Bal. Code, § 4826, provides for the election of members of the county and state committees of political parties entitled to participate in the primary election, that, if

in any county a party is denied the right to participate in the primary election, it cannot select such committee; that the act thus denies it a party organization, imperils its party integrity and impinges article 14 of the Federal constitution and article 1, § 19 and article 11, § 5 of the state constitution. This contention is unsound for two reasons. In the first place, § 4826 only applies to such political parties as are entitled to participate in primary elections, and a less-than-ten-per-cent party, by necessary implication, would still have the right to hold county conventions or mass meetings, make its nominations and select its committeemen under the old law. Moreover, § 26 of the primary law, Rem. & Bal. Code, § 4830, expressly preserves to the less-than-ten-per-cent parties the right to hold conventions under the old law. In the second place, this court has held that the question of the integrity of political parties is a political rather than a judicial question, thus disposing of relator's contention here even on broader ground than that above stated. In *State ex rel. Zent v. Nichols, supra*, this court said:

"The last general objection to be noticed is that the law tends to destroy political parties. Counsel confess that they can find no specific provision of the constitution on which to base the contention, but they assert the general utility and necessity of parties, and argue therefrom that legislation tending to destroy them must receive the condemnation of the courts. It has seemed to us, however, that this is a political rather than a judicial question, and that an appeal from the legislative decision must be made to the people rather than to the courts."

See, also, *State ex rel. Shepard v. Superior Court*, 60 Wash. 370, 381-382, 111 Pac. 233, 140 Am. St. 925.

Relator relies upon the case of *Britton v. Board of Election Com'rs*, 129 Cal. 337, 61 Pac. 1115, 51 L. R. A. 115. But that case is clearly distinguishable. The statute there involved provided an *exclusive* scheme of nominations and hence, in effect, totally denied to less-than-three-per-cent parties any right to assemble in convention or otherwise, thus

absolutely destroying their status as political organizations and the right of franchise of their members as citizens. That right, however, is not only by necessary implication preserved to the less-than-ten-per-cent parties by our statute, § 4826, but is expressly preserved as we have seen in § 4830. This meets every requirement of the constitution. *Morrow v. Wipf*, 22 S. D. 146, 115 N. W. 1121-1127; *Ladd v. Holmes*, 40 Ore. 167, 66 Pac. 714, 91 Am. St. 457.

Nor do we find merit in the claim that if, at a general election, a party fail to poll ten per cent of the total votes cast, its committeemen elected at such election do not constitute a legal committee and that hence the primary law deprives such party of the power thereafter to call a convention. The very fact that such party was qualified to hold such a primary election by having polled at the last prior election ten per cent of the vote cast, effectually qualifies it to elect its committeemen at such primary election and makes the committeemen so elected the valid party committee with power to call a convention for the succeeding election.

The claim that the primary election law impinges the rule of uniformity in the election of officers prescribed in article 11, § 5 of the state constitution is equally unfounded for two reasons. In the first place, the constitutional provision relates to the election of officers, not to the nomination of candidates for office; in the second place, the primary law is uniform in its application to all persons and political parties similarly circumstanced. *State ex rel. Fitz v. Jensen*, 86 Minn. 19, 89 N. W. 1126; *State ex rel. Adair v. Drexel*, 74 Neb. 776, 105 N. W. 174; *State ex rel. Webber v. Felton*, 77 Ohio St. 554-572, 84 N. E. 85.

After a most careful consideration of the whole question, we are constrained to hold that the writ should be denied. It is so ordered.

HOLCOMB, FULLERTON, MAIN, and CHADWICK, JJ., concur.