Honorable Ralph Munro Secretary of State Elections Division 120 E. Union Avenue P.O. Box 40232 Olympia, Washington 98504-0232
Dear Secretary Munro:
By letter previously acknowledged, you have asked for our opinion on the following questions:
 1. Under what circumstances does a major political party cease to be a major political party under RCW 29.01.090?
 2. For any newly qualified major political party, at what time and by what mechanism are the original precinct committee officers selected?
 3. If a party is not organized pursuant to chapter 29.42 RCW, but has qualified as a major political party within the past two years, may it designate the governing body or officers who can perform the functions assigned by law to the county or state committee of a major party?
 4. Do the provisions of RCW 29.45.010(4) restrict membership on a three-person election board to members of the two parties whose candidates for president polled the greatest and the next greatest number of votes in that county?
 5. If a county auditor decides to appoint additional clerks to the election board, pursuant to RCW 29.45.020, what must be the partisan affiliation of the inspector, two judges, and any clerks if there are more than two major political parties? Does your answer with regard to the political affiliation of board members depend upon whether the county chair has provided a list of names to the auditor?
 6. What must be the party affiliations of members of ballot pick-up and delivery teams designated pursuant to RCW 29.54.037, if there are more than two major political parties?
 BRIEF ANSWERS
Whenever a general election occurs in an even-numbered year, any party with a candidate drawing five percent of the vote for any statewide state or federal office qualifies as a "major party"; this designation holds until an election occurs in an even-numbered year in which one or more statewide offices appear on the ballot and a party previously qualifying as a major party fails to gain five percent of the vote for any of its statewide candidates.
For a newly qualified major political party, precinct committee officers are initially elected at the next general election in an even-numbered year after the election in which the new major party qualified. Until the party is organized, pursuant to chapter 29.42 RCW, the functions assigned by law to state and central committees of major parties may be performed by such persons as the newly qualified major party may designate.
When a three-person election board is chosen pursuant to RCW 29.45.010(4), two of its members are members of the party whose candidate for president polled the greatest vote in that county, and the third member is a member of the party whose presidential candidate polled the next highest vote. If additional clerks are appointed, they may be chosen from any major party provided that no single party gains a majority on the board of more than one. The functions covered by RCW 29.54.037 should be performed by a team consisting of one representative of each major political party which designates a representative for that purpose.
 ANALYSIS
Washington statutes divide political parties into two categories, "major" and "minor", and treats the two types of parties differently in a variety of ways. For many years, only two parties — the Republican and the Democratic — have qualified as major parties. However, in the 1996 general election, the presidential candidate of a third party, the Reform Party, received more than five percent of the statewide vote in Washington, qualifying the Reform Party for "major party" status. Your questions concern the procedures for implementing this change, and otherwise for dealing with more than two major parties.
 1. UNDER WHAT CIRCUMSTANCES DOES A MAJOR POLITICAL PARTY CEASE TO BE A MAJOR POLITICAL PARTY UNDER RCW 29.01.090?
RCW 29.01.090 defines a "major political party" as follows:
 "Major political party" means a political party of which at least one nominee for president, vice president, United States senator, or a state-wide office received at least five percent of the total vote cast at the last preceding state general election in an even-numbered year: PROVIDED, That any political party qualifying as a major political party under the previous subsection (2) or subsection (3) of this section prior to its 1977 amendment shall retain such status until after the next state general election following June 30, 1977.
RCW 29.01.100 provides:
 "Minor political party" means a political organization other than a major political party.
Your first question asks for an explanation of the language in RCW 29.01.090 that determines when a political party has "major party" status. This status is achieved, the statute provides, when a political party has at least one nominee ". . . for president, vice president, United States senator, or a state-wide office" who receives at least five percent of the total votes cast at a "state general election in an even-numbered year." Specifically, your first question asks how a party might lose "major party" status after achieving it in a particular year.
In this case, we think the plain language of RCW 29.01.090 provides a clear guideline to determine, at any point in time, which parties are "major parties." When statutory language is plain and unambiguous, there is no need to resort to external material for interpretation. State v. Mollichi, 132 Wn.2d 80,936 P.2d 408 (1997); Geschwind v. Flanagan, 121 Wn.2d 833,854 P.2d 1061 (1993). In this case, at any point in time, the question is whether any nominee of a particular party for president, vice-president, U.S. Senator, or a statewide office received at least five percent of the total votes cast at the last state general election occurring in an even-numbered year. As of this writing, for instance, the results of the 1996 general election determine which parties are "major parties." The next such election will occur in 1998.
As you point out in your opinion request, there is a wide variance in the number of offices on the ballot in general elections in even-numbered years. In Washington, all of the statewide state officers are elected for four-year terms, and their elections coincide with the years in which the president and vice president of the United States are chosen (1992, 1996, 2000, etc.) Thus, every four years, almost all of the offices listed in RCW 29.01.090 are on the ballot.
The only office listed in the statute which is on a different "cycle" from the rest is the office of U.S. Senator. Senators are elected for six-year terms, and Washington elects two senators. Each individual senate seat alternates between election in a "presidential" election year and election in the presidential "off-year." One senate seat was last filled in 1992 and will be filled again in 1998; the other was last filled in 1994 and will be filled again in 2000. This means that in any twelve-year period, there will be two elections (such as 1994 and 1998) in which the only statewide office on the ballot is the office of U.S. Senator. Of necessity, then, the only yardstick for assigning "major party" status in such years is that office. Thus, for any party which qualified as a "major party" in 1996 because one or more of its nominees for statewide office received more than five percent of the total vote, the party must gain five percent of the vote for U.S. Senator in 1998, or it will again be a "minor" party for the succeeding two years. In 2000, there will be a presidential election, as well as elections for all eight state offices and an election for the other U.S. Senate seat, so the opportunity to regain "major" party status will be multiplied.
The result of the election cycle, of course, is that a party may alternate back and forth between major and minor party status, especially if it does not vigorously contest every office on the ballot. While this "flickering" status may be an inconvenience, both for the party in question and for those administering elections, the clear language of the statute sets up the possibility.
This reading is consistent with the reasoning of the State Supreme Court in an early case arising under a predecessor of the current election statutes. In State ex rel. Rogers v. Howell, 92 Wn. 381,159 P. 118 (1916), a candidate attempted to file for the 1916 primary election on the socialist ticket, asserting that the socialist party had achieved "ten-percent party" status (the then equivalent of "major party" status) because two socialist candidates for the U.S. House of Representatives had received more than ten percent of the vote in the 1914 general election. The Court rejected the argument that "ten percent" status could be based on anything other than a vote for a statewide office. Since the only statewide office on the 1914 ballot was U.S. Senator, and since the socialist candidate had not won ten percent of the votes for that office, the Court ruled that the socialists were not a "ten percent" party.
The twelve-year cycle also contains one even-numbered year in which (barring a special election for an unexpired term — see footnote 3) none of the offices listed in RCW 29.01.090 will be on the ballot. 1990 was such an election; 2002 will be another. Obviously, such an election cannot "count" for purposes of determining major party status, as there are no statewide election contests to serve as a measuring stick for making such a determination. A literal or hypertechnical reading of the statute would render all parties "minor parties" for two years after each such election, as none of them could possibly achieve the five percent threshold in a year when no offices are on the ballot. Statutes will not be read literally if the consequences would be strained, unlikely, or absurd. State v. Neher, 112 Wn.2d 347,771 P.2d 330 (1989). Thus, assuming no special election is held in 2002 (and assuming no further amendment of current law), the results of the general election in 2000 will determine "major party" status until the general election of 2004.
 2. For any newly qualified major political party, at what time and by what mechanism are the original precinct committee officers selected?
This question is based upon RCW 29.42.040 and .050, which provide for the election of precinct committee officers for each major party concurrently with the general election in each even-numbered year. The county central committee of a major political party consists of the precinct committee officers from the voting precincts in the county. RCW 29.42.030. The county central committee, in turn, elects the members of the state committee of each major political party. RCW 29.42.020.
Again, your question is prompted by the fact that the Reform Party, formerly a "minor party" as defined in state statute, and therefore not covered by the cited provisions in chapter 29.42 RCW, is now a "major party" by virtue of its performance in the 1996 general election. Not having been a major party before, the Reform Party has never elected (indeed, has had no opportunity to elect) precinct committee officers pursuant to RCW 29.42.050, and for the same reason, has no county or state committees organized pursuant to chapter 29.42 RCW.
The only logical way to read chapter 29.42 RCW together with RCW 29.01.090 is to find that, since the Reform Party is now (as of the 1996 election) a major party, an election will be held in 1998 for precinct committee officers of that party. Once elected, those officers can form the county and state committees referred to in various statutes, and these committees can then play the roles assigned to them by state law.
 3. If a party is not organized pursuant to chapter 29.42 RCW, but has qualified as a major political party within the past two years, may it designate the governing body or officers who can perform the functions assigned by law to the county or state committee of a major party?
This question follows upon question two and relates, again, to the fact that a party newly arrived at "major party" status will not initially be organized pursuant to chapter 29.42 RCW, as that form of organization applies exclusively to "major" parties. In the interim before precinct committee officers can be elected and these officers in turn can form the county and state committees envisioned in chapter 29.42 RCW, who will perform any functions assigned by law to the "county committee" or the "state committee" of a major party?
A number of statutes assign duties or functions to the state or county central committee of a party. RCW 29.18.150 allows the county or state central committee, depending on the office, to fill vacancies in a major party ticket when no one files for nomination to an office. RCW 29.18.160 permits either the county or the state committee, depending on the office, to fill vacancies on the ballot in a partisan primary, in case of the death or disqualification of a candidate. RCW 29.60.010(f) entitles each major party to designate a representative to serve on the state election administration and certification board, "designated by and serving at the pleasure of the chair of the party's state central committee." There are other examples as well.
Given that a new major party cannot be organized for the first two years under chapter 29.42 RCW, these statutes can be given meaning in either of two ways: (1) under a literal interpretation, since such a party lacks a state or county central committee as described in chapter 29.42 RCW, it cannot perform any functions assigned to those bodies; or (2) until the party has the opportunity to organize itself according to chapter 29.42 RCW, the functions assigned to the state or county central committees may be exercised by such bodies as the party (as of now still organized as a minor party) may designate. The first option must be excluded, we conclude, because it would give no meaning to the "major party" status otherwise conferred on the new party by RCW 29.01.090. The legislature surely did not intend for "major party" status to be an empty honor for at least two years (at least as related to the functions under discussion).
Accordingly, until the next general election at which precinct committee officers can be selected, the existing party governing body may act as the "state central committee" for purposes of carrying out the statutes cited above, and may determine who or what body constitutes the "county central committee" for performing functions assigned to such committees.
 4. Do the provisions of RCW 29.45.010(4) restrict membership on a three-person election board to members of the two parties whose candidates for president polled the greatest and the next greatest number of votes in that county?
 5. If a county auditor decides to appoint additional clerks to the election board, pursuant to RCW 29.45.020, what must be the partisan affiliation of the inspector, two judges, and any clerks if there are more than two major political parties? Does your answer with regard to the political affiliation of board members depend upon whether the county chair has provided a list of names to the auditor?
These two questions ask for interpretations of the statutes regarding the appointment of the officers who conduct elections in each precinct. RCW 29.45.010(1) requires, at a minimum, that the election in each precinct be overseen by a board consisting of one inspector and two judges:
 (1) At least ten days prior to any primary or election, general or special, the county auditor shall appoint one inspector and two judges of election for each precinct (or each combination of precincts temporarily consolidated as a single precinct for that primary or election), other than those precincts designated as vote-by-mail precincts pursuant to RCW 29.36.120. Except as provided in subsection (3) of this section, the persons appointed shall be among those whose names are contained on the lists furnished under RCW 29.45.030 by the chairpersons of the county central committees of the political parties entitled to representation thereon. Such precinct election officers, whenever possible, should be residents of the precinct in which they serve.
RCW 29.45.010(1).
Subsection (4) of the same section provides that:
 (4) The county auditor shall designate the inspector and one judge in each precinct from that political party which polled the highest number of votes in the county for its candidate for president at the last preceding presidential election and one judge from that political party polling the next highest number of votes in the county for its candidate for president at the same election. . . .
RCW 29.45.010(4). (Emphasis added.)
Whether there are two or more major parties, this language makes it clear that the party which polled the highest number of presidential votes in the county is entitled to have the inspector and one judge in each precinct appointed from among its membership, while the second judge is chosen from the membership of the party polling the second highest vote for president. Parties polling third or lower are not represented on a three-member election board. We therefore answer your fourth question in the affirmative.
Your fifth question concerns the possibility that the county auditor or equivalent officer will expand the size of an election board by appointing additional members known as "clerks." RCW 29.45.020 provides as follows:
 At the same time the officer having jurisdiction of the election appoints the inspector and two judges as provided in RCW 29.45.010, he may appoint one or more persons to act as clerks if in his judgment such additional persons are necessary, except that in precincts in which voting machines are used, the judges of election shall perform the duties required to be performed by clerks. Each clerk appointed shall represent a major political party: PROVIDED, That the political party representation of a single set of precinct election officers shall, whenever possible, be equal but, in any event, no single political party shall be represented by more than a majority of one at each polling place. . . ."
RCW 29.45.020. (Emphasis added.)
When there are three major political parties, by virtue of the operation of RCW 29.45.010, discussed above, two at most will be represented on the three-member board consisting of the inspector and the two judges. If additional clerks are appointed, RCW 29.45.020 imposes three "political party" requirements:
a. each clerk must represent a major political party;
 b. the political party representation on the whole "election board" must be equal, whenever possible;
 c. no single political party shall be represented by a majority of more than one.
Assuming that Party A polled the most presidential votes in a county, and Party B polled the second most votes, and assuming that there are three major parties (A, B, and C), the inspector and one of the judges in each precinct of the county would ordinarily represent Party A, and the other judge would represent Party B. If the county auditor expands the election board through the appointment of a single clerk, the clerk would have to be a member of Party C. That would satisfy the three conditions in RCW 29.45.020. The clerk would represent a major party, the party membership on the board would be as near to equal as possible, and no party would have a majority membership on the board. If the auditor chooses to appoint two clerks, so that the total membership of the election board is five, at least one of the clerks would represent Party C, and the second clerk could be from either Party B or Party C. As additional clerks are added, the statute requires the county election officer to maintain, so far as possible, equality among the major parties, whether the number of major parties be two, three, or some other number.
Your fifth question also identifies another possible issue. Precinct election officers are chosen by the county auditor (or equivalent officer) from lists of nominees from the political parties. RCW 29.45.030 provides that each precinct committee officer will submit to the party's county chair a list of persons qualified to serve on the election board in the precinct. The county chair, in turn, certifies a list of names to the officer conducting the election (usually the county auditor).
By virtue of subsections (2) and (3) of RCW 29.45.010, the county auditor ordinarily selects the election board membership for each precinct from the lists submitted by the county chairs of the parties. However, the county election officer may delete from the lists persons who are unable or unwilling to serve, or persons who, even after appropriate training opportunities, are deemed unqualified for the position. The county party chairs have the opportunity to submit additional names to make up for those deleted. If they fail to do so, or if the number of names submitted by the party is insufficient to fill the positions to be filled, the auditor ". . . may appoint a properly trained person whose name does not appear on such a list as an inspector or judge of election for a precinct." RCW 29.45.010(3). If Party A or Party B fails to submit a sufficiently complete list of precinct officers, the auditor can (in those precincts where the list is deficient) appoint members of other parties, or persons without party affiliation, as inspectors or judges.
This procedure is not replicated by RCW 29.45.020 with respect to the appointment of clerks. RCW 29.45.020 refers to representation of political parties, with no specific indication that such persons be "nominated" by the county chairs as with judges and inspectors. RCW 29.45.030 provides for the nomination by each precinct committee officer of persons in the precinct ". . . qualified to act upon the election board. . . ." The county chair of each party is to use these names to compile a list of qualified election workers. Since a clerk is a member of the "election board," it would be logical for the county auditor to choose clerks from the lists compiled by the county chairs pursuant to RCW 29.45.030, although the statutes are not absolutely explicit on this point. If the lists do not provide enough names of qualified workers, the county auditor could, as with the appointment of inspectors and judges, appoint clerks not on the lists who are known to be qualified.
 6. What must be the party affiliations of members of ballot pick-up and delivery teams designated pursuant to RCW 29.54.037, if there are more than two major political parties?
RCW 29.54.037(1) provides as follows:
 At the direction of the county auditor, a team or teams composed of a representative of each major political party shall stop at designated polling places and pick up the sealed containers of voted ballots for delivery to the counting center. There may be more than one delivery from each polling place. Two precinct officials, one representing each major political party, shall seal the voted ballots in containers furnished by the county auditor and properly identified with his or her address with uniquely prenumbered seals.
RCW 29.54.037(1). (Emphasis added.)
Your question is how to organize the pick-up and delivery teams when there are more than two major political parties. As to the team which stops at polling places and picks up the sealed ballot containers for delivery to the counting center, the underscored language above refers to a "representative of each major political party." If there are three major political parties, the teams would ordinarily now have three members a piece, rather than two. We could envision an exception to this requirement only if a major party has so little "presence" in a county that no persons can be found to represent the party on the pick-up and delivery team(s). We note, though, that the statute does not contemplate a separate team for each precinct, merely one or more teams per county traveling to the various polling places. Thus, a major party would usually have sufficient membership in a county to furnish representatives on the pick-up and delivery teams, even if not fully organized in each precinct.
The other underscored reference from RCW 29.54.037 directs that "[t]wo precinct election officials, one representing each major political party," seal the ballots in the designated container. This reference requires some interpretation where there are more than two major parties. However, as noted earlier, a three-member election board (with one inspector and two judges) ordinarily contains representatives of only two parties. In precincts where these three are the only "precinct election officials," there will be no representatives of the third major party to participate in the sealing of the ballots.
However, where the election board has been expanded through the appointment of clerks pursuant to RCW 29.45.020, there will ordinarily be representatives of all major political parties present among the precinct election officials. Where this is so, it would be logical to permit a representative of each major party represented on the precinct election board to participate in the sealing of the ballots, even if the number of such representatives is greater than two. This procedure would carry out the obvious purpose of the statute (to allow the parties to directly observe what happens to the ballots before they are counted, and thus promote trust in the integrity of the process) better than arbitrarily excluding one party in order to follow the legislature's direction that "two" people participate in the sealing process.
We trust this opinion will be of assistance to you.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
JAMES K. PHARRIS Sr. Assistant Attorney General